[No. B170027. Second Dist., Div. Six. Aug. 17, 2004.]

SANTA BARBARA COUNTY FLOWER AND NURSERY GROWERS ASSOCIATION, INC., Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA, Defendant and Respondent.

COUNSEL

Price, Postel & Parma and David K. Hughes for Plaintiff and Appellant.

Stephen Shane Stark, County Counsel, and Alan L. Seltzer, Chief Assistant County Counsel, for Defendant and Respondent.

OPINION

PERREN, J.—The California Coastal Commission (Commission) directed the County of Santa Barbara (County) to submit a proposed amendment to its local coastal plan (LCP) concerning greenhouse development in the Carpinteria Valley, together with an environmental assessment of such development. As its environmental assessment, the County prepared and processed an environmental impact report (EIR) in accordance with the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.)[1] Santa Barbara Flower and Nursery Growers Association, Inc. (Association), challenged the adequacy of the EIR by filing a petition for writ of mandate.

After the petition was filed, the County realized that the EIR had been prepared unnecessarily because the approval of LCP amendments by the Commission is exempt from the EIR requirements of CEQA. (§§ 21080.5, 21080.9.) The County asserted the exemption as a defense to the petition.

The trial court denied the petition, agreeing with the County that the approval of the LCP amendment was exempt from EIR requirements. The court also concluded that the Association's petition was premature because the Commission's process for approving the LCP amendment had not been completed. The Association appeals the judgment, contending that the County waived the EIR exemption by preparing an EIR and submitting it to the Commission.

---

[1] All statutory references are to the Public Resources Code.

We conclude that the California Coastal Act of 1976 (Coastal Act) (§ 30000 et seq.) and CEQA empower the Commission to approve LCP amendments pursuant to a regulatory program that is exempt from the EIR requirements of CEQA. (§§ 21080.5, 21080.9.)[2] The preparation of an EIR by the County did not waive the exemption or preclude the Commission from approving the County's LCP amendment pursuant to the standards of its regulatory program. We do not consider the Association's contention that the Commission waived the exemption through its own conduct because the Commission is not a party to the action, and because there has been no administrative decision by the Commission concerning the LCP amendment. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1982, the Commission certified the County's LCP for portions of the County in the coastal zone. Policy 8-5 of the LCP required discretionary approval of greenhouse developments of 20,000 square feet or more, and stated that the impact of greenhouse development on the coastal resources of Carpinteria Valley needed further study. Policy 8-5 directed the County to conduct a "master environmental impact assessment" to determine the level of greenhouse development that the Carpinteria Valley could support without adverse environmental impact. Policy 8-5 provided that if the assessment was not completed within three years, "greenhouse development . . . shall automatically become a conditional use on Agricultural I designated lands in the Carpinteria Valley. If, however, the County and Coastal Commission agree on land use designation or policy changes based on the County's assessment of adverse environmental impacts of greenhouses gathered through the permit process, conditional use permits shall not be required for greenhouse development."

---

[2] Section 21080.5, subdivisions (a) and (c) provide in pertinent part: "(a) . . . when the regulatory program of a state agency requires a plan or other written documentation containing environmental information and complying with paragraph (3) of subdivision (d) to be submitted in support of an activity listed in subdivision (b), the plan or other written documentation may be submitted in lieu of the environmental impact report required by this division if the Secretary of the Resources Agency has certified the regulatory program pursuant to this section. [¶] . . . [¶] (c) A regulatory program certified pursuant to this section is exempt from Chapter 3 (commencing with Section 21100), Chapter 4 (commencing with Section 21150), and Section 21167 . . . ."

Section 21080.9 provides in pertinent part: "This division shall not apply to activities and approvals by any local government . . . as necessary for the preparation and adoption of a local coastal program or long-range land use development plan pursuant to [the Coastal Act]; provided, however, that certification of a local coastal program or long-range land use development plan by the California Coastal Commission pursuant to [the Coastal Act] shall be subject to the requirements of this division. For the purpose of Section 21080.5, a certified local coastal program or long-range land use development plan constitutes a plan for use in the California Coastal Commission's regulatory program."

When the master environmental impact assessment had not been completed by the late 1990's, the Commission expressed its concern in a July 27, 1998, letter to the County. After noting that a number of greenhouse facilities had been approved without the benefit of the master environmental assessment promised by policy 8-5 of the LCP, the letter directed the County to complete the assessment and prepare an LCP amendment to regulate future greenhouse development. The letter also stated that "it is problematic" whether the Commission would approve any more greenhouse facilities until the County submitted its environmental assessment and an LCP amendment with proposed changes in land use designations for greenhouse development.

In February 1999, the County released a "Carpinteria Valley Greenhouse Study Options Paper" that provided various options for greenhouse development in the Carpinteria Valley. Thereafter, the County prepared an EIR to assess the impact of these options and to fulfill its obligation to the Commission set forth in policy 8-5 and the July 27, 1998, letter.

The project covered by the EIR was defined as the "Carpinteria Valley Greenhouse Study." A draft of the EIR was completed in August 1999, and a proposed final EIR was issued in March 2000. In February 2002, the County certified the final EIR and adopted an amendment to the County's LCP implementing ordinances to regulate future greenhouse expansion. The LCP amendment and the EIR were submitted to the Commission for review and approval. At the time the petition was filed and at all times prior to the judgment, the approval process for the LCP amendment was actively pending before the Commission.

In March 2002, the Association filed a petition for writ of mandate challenging the adequacy of the EIR under CEQA standards. The petition alleged that the EIR did not adequately discuss the environmental effects of open field agriculture or alternatives to the project, or adequately analyze the project "in relation to applicable state policies, general and regional plans, and local ordinances, and any inconsistencies that might exist with such plans and ordinances."

In April 2003, the trial court denied the petition. The court found that the "activities and approvals by the County that are the subject of this Petition are exempt from CEQA, because they were necessary for the preparation and adoption of a local coastal program, making the Project statutorily exempt. [Citations.] The County had no statutory duty to comply with CEQA in adopting and submitting its proposed LCP amendments to the Commission." The decision also stated that "[p]etitioner has not exhausted all administrative remedies in that the Coastal Commission has not yet certified the proposed amendments to the local coastal program."

## DISCUSSION

### Association Contentions

The Association contends that the trial court erred in denying its petition without ruling on the merits. The Association argues that the EIR exemption set forth in sections 21080.5 and 21080.9 is discretionary, and that by electing to prepare an EIR, the County waived the exemption and obligated itself to comply with all EIR requirements. The Association further contends that the Commission ratified the County's election to rely on the EIR process when it accepted the EIR as satisfying the County's obligation to conduct an environmental assessment of future greenhouse development in the Carpinteria Valley. The Association argues that by making this decision, the Commission failed to comply with its own regulatory program and became obligated to comply with EIR requirements in approving the County's LCP amendment. The Association also asserts various procedural and equitable reasons why the trial court should not have applied the EIR exemption.

### Statutory Scheme

■ The Coastal Act is a comprehensive statutory scheme to protect the environment of California's coastal zone. (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 571 [276 Cal.Rptr. 410, 801 P.2d 1161].) In general, the Act gives the Commission regulatory authority to carry out its policies.

■ Among other things, the Coastal Act requires the implementation of LCP's that embody statewide standards for preserving the coastal zone. (*Citizens of Goleta Valley v. Board of Supervisors, supra,* 52 Cal.3d at p. 571; §§ 30001.5, 30108.6; see also §§ 30500, 30511–30514.) Local government has the initial responsibility to prepare an LCP or LCP amendment covering the coastal zone within its jurisdiction. (§ 30500.) The local government then submits the LCP or amendment to the Commission. (§ 30510.) The submission must include a complete environmental review and satisfy other policies and regulations of the Commission. (§§ 30510–30514.)

■ An LCP or LCP amendment cannot take effect unless approved by the Commission. To be approved, the Commission must certify that it conforms to the environmental protection policies of the Coastal Act. (§§ 30001.5, 30500, 30511–30514; *Citizens of Goleta Valley v. Board of Supervisors,*

*supra,* 52 Cal.3d at pp. 571–572; see Cal. Code Regs., tit. 14, §§ 13115, 13119, 13321.) Commission decisions are subject to judicial review under a special section of CEQA. (§ 21080.5, subd. (g).)[3]

■ Although CEQA generally requires an EIR prior to the approval of any project that may have a significant adverse effect on the environment, an EIR is not required for the approval of an LCP or LCP amendment by the Commission. CEQA authorizes state agencies with environmental responsibilities, including the Commission, to operate under their own regulatory programs that replace the EIR process with a comparable form of environmental review. (§ 21080.5, subds. (a), (c); *Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 113 [65 Cal.Rptr.2d 580, 939 P.2d 1280]; *San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 552 [45 Cal.Rptr.2d 117].)

■ To qualify for the EIR exemption, a regulatory program must be certified by the California Resources Agency. (§ 21080.5, subds. (a), (c); *Environmental Protection Information Center, Inc. v. Johnson* (1985) 170 Cal.App.3d 604, 611 [216 Cal.Rptr. 502].) To obtain certification, the program must satisfy statutory criteria that assure environmental review that is functionally equivalent to the EIR process. (§ 21080.5, subd. (d);[4] *Mountain Lion Foundation v. Fish & Game Com., supra,* 16 Cal.4th at pp. 126–127.)

---

[3] Section 21080.5, subdivision (g) provides: "An action or proceeding to attack, review, set aside, void, or annul a determination or decision of a state agency approving or adopting a proposed activity under a regulatory program that has been certified pursuant to this section on the basis that the plan or other written documentation prepared pursuant to paragraph (3) of subdivision (d) does not comply with this section shall be commenced not later than 30 days from the date of the filing of notice of the approval or adoption of the activity."

[4] Section 21080.5, subdivision (d) provides: "To qualify for certification pursuant to this section, a regulatory program . . . shall meet all of the following criteria: [¶] (1) The enabling legislation of the regulatory program does both of the following: [¶] (A) Includes protection of the environment among its principal purposes. [¶] (B) Contains authority for the administering agency to adopt rules and regulations for the protection of the environment, guided by standards set forth in the enabling legislation. [¶] (2) The rules and regulations adopted by the administering agency for the regulatory program do all of the following: [¶] (A) Require that an activity will not be approved or adopted as proposed if there are feasible alternatives or feasible mitigation measures available that would substantially lessen a significant adverse effect that the activity may have on the environment. [¶] (B) Include guidelines for the orderly evaluation of proposed activities and the preparation of the plan or other written documentation in a manner consistent with the environmental protection purposes of the regulatory program. [¶] (C) Require the administering agency to consult with all public agencies that have jurisdiction, by law, with respect to the proposed activity. [¶] (D) Require that final action on the proposed activity include the written responses of the issuing authority to significant environmental points raised during the evaluation process. [¶] (E) Require the filing of a notice of the decision by the administering agency on the proposed activity with the Secretary of the Resources Agency. . . . [¶] (F) Require notice of the filing of the plan or other written documentation to be made to the public and to a person who requests, in writing, notification. . . . [¶] (3) The plan or other written documentation required by the regulatory program

■ The Commission obtained certification of its regulatory program in 1979, and the LCP approval process has been exempt from EIR requirements ever since. (Cal. Code Regs., tit. 14, § 15251, subd. (f); *La Costa Beach Homeowners' Assn. v. California Coastal Com.* (2002) 101 Cal.App.4th 804, 819 [124 Cal.Rptr.2d 618]; *San Mateo County Coastal Landowners' Assn. v. County of San Mateo, supra,* 38 Cal.App.4th at p. 552.) As stated in the CEQA Guidelines, "(a) CEQA does not apply to activities and approvals pursuant to the California Coastal Act . . . by: [¶] (1) Any local government . . . necessary for the preparation and adoption of a local coastal program . . . . [¶] . . . [¶] (c) This section shifts the burden of CEQA compliance from the local agency . . . to the California Coastal Commission. . . ." (Cal. Code Regs., tit. 14, § 15265.) Accordingly, neither the Commission nor the County was required to prepare an EIR prior to the approval of the County's LCP amendment. (§§ 21080.5, 21080.9.)

*No Waiver of EIR Exemption*

It is undisputed that the section 21080.5 exemption applied to the County's preparation of its LCP amendment and the Commission's review and approval process. The County could have fulfilled its obligation to make an environmental assessment of greenhouse expansion in a form other than an EIR as long as it complied with the Commission's certified regulatory program. Nevertheless, for reasons not explained in the record, the County chose to prepare an EIR, satisfy the procedural requirements for approval of the EIR, and submit the approved EIR to the Commission as its environmental assessment.

■ he Association focuses on this choice as the basis of its argument that the section 21080.5 exemption does not apply. The Association contends that the exemption is "discretionary," and applies only when a local government submits to the Commission environmental review documents other than an EIR. The Association argues that a local governmental entity has the power to waive the Commission's EIR exemption and that the County waived the exemption and obligated itself to comply with EIR requirements merely by preparing an EIR as its environmental assessment. We disagree.

does both of the following: [¶] (A) Includes a description of the proposed activity with alternatives to the activity, and mitigation measures to minimize any significant adverse effect on the environment of the activity. [¶] (B) Is available for a reasonable time for review and comment by other public agencies and the general public."

■ Nothing in CEQA or the Coastal Act gives local government the power to opt out of the Commission's regulatory program and choose to be governed by CEQA's regulatory scheme. To the contrary, the section 21080.5 exemption is necessary to facilitate the Commission's legislative mandate under the Coastal Act to implement statewide policies for coastal zone development rather than local policies that would be critical to an EIR for a local project. (§ 30004; *Gherini v. California Coastal Com.* (1988) 204 Cal.App.3d 699, 709–710 [251 Cal.Rptr. 426]; *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 489 [183 Cal.Rptr. 909].)

■ The Association also appears to treat the County's obligation to prepare an environmental assessment for its LCP amendment as a separate project from the Commission's review and approval process. There is no statutory or judicial authority that permits the approval of an LCP amendment to be separated into two projects, one subject to judicial review under the EIR provisions of CEQA (§ 21167) and the other subject to judicial review under a state agency's certified regulatory program. (§ 21080.5, subd. (g).)

The Association attempts to overcome the flaws in these arguments by focusing on the Commission's acceptance of the EIR as the County's environmental assessment. The Association contends that, by accepting the EIR, the Commission made its own discretionary choice to waive the section 21080.5 exemption, independently of the County's decision to prepare the EIR.

The Association argues that by accepting the EIR, the Commission ratified the County's reliance on the EIR process and elected not to comply with its own certified regulatory program. Consequently, CEQA standards became binding on the Commission and obligate the Commission to approve the County's LCP amendment in accordance with an EIR that is adequate under CEQA standards.

Nothing in the record supports these assertions, and the Association's arguments regarding the Commission's regulatory program are conjecture. Although a determination by the Commission may be overturned on appeal if it fails to strictly comply with its regulatory program (*Mountain Lion Foundation v. Fish & Game Com., supra,* 16 Cal.4th at p. 132), the record does not suggest that the mere acceptance of an EIR as the County's environmental assessment violates the Commission's regulatory program. Neither the content of the regulatory program nor the Commission proceedings regarding the County's LCP amendment are part of the administrative record. The Association's petition and the administrative record focus exclusively on the content and approval of the County's EIR.

 Furthermore, the Commission would be an indispensable party if this action were expanded to consider factual questions affecting the Commission's regulatory discretion. (See *Kaczorowski v. Mendocino County Bd. of Supervisors* (2001) 88 Cal.App.4th 564, 568 [106 Cal.Rptr.2d 14].) Unless the Commission is a party, a judgment that limits the Commission's discretion in the LCP proceeding would be ineffective against the Commission and subject to collateral attack. (*Id.*, at p. 570; *Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 501–502 [157 Cal.Rptr. 190].)

In addition, judicial review is premature because there has been no final Commission determination approving or disapproving the LCP amendment. (*Alta Loma School Dist. v. San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 554–557 [177 Cal.Rptr. 506].) In the context of administrative proceedings, a controversy is not ripe for adjudication until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170–172 [188 Cal.Rptr. 104, 655 P.2d 306]; *Alta Loma,* at pp. 554–557.)

In essence, the Association is asking the court to decide a different case than the case set forth in the administrative record and the petition, and without the proper parties and relevant administrative decision. Such a determination is beyond the authority of the court.

### Association's Equitable Arguments Lack Merit

The Association also asserts several procedural and equitable reasons why the trial court should not have considered the EIR exemption. We reject these claims.

First, the trial court had authority to base its decision on the EIR exemption even though the issue was not raised until shortly before trial. The trial court correctly concluded that the record and statutory framework established as a matter of law that the conduct of the County did not deprive the Commission of its exemption, and that the effect of the Commission's conduct on the exemption could not be determined in the instant action. (See *Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1407 [43 Cal.Rptr.2d 170]; *Napa Valley Wine Train, Inc. v. Public Utilities Com.* (1990) 50 Cal.3d 370, 377–383 [267 Cal.Rptr. 569, 787 P.2d 976].)

Second, the County did not waive its ripeness claim by failing to allege it as an affirmative defense. The Association had the burden of establishing that the administrative proceeding had been completed and administrative remedies exhausted. Also, exhaustion of administrative remedies is jurisdictional, not a matter of judicial discretion. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942]; see *Leff v. City of Monterey Park* (1990) 218 Cal.App.3d 674, 680–681 [267 Cal.Rptr. 343].)

Third, the County is not estopped from raising the exemption and ripeness issues. Under the doctrine of equitable estoppel, a party cannot deny facts that it intentionally led another to believe if the party asserting estoppel is ignorant of the true facts, and relied to its detriment. (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488–489 [91 Cal.Rptr. 23, 476 P.2d 423].) The section 21080.5 exemption is a statute, not a fact. Nothing in the record shows that the Association was unaware of the exemption, or that the County's decision to prepare an EIR prevented the Association from ascertaining the applicable law. Also, estoppel cannot be applied against a governmental entity if it would nullify a policy adopted for the benefit of the public. (*Id.*, at p. 493.) Protection of the coastal zone environment by the Commission is a state policy benefiting the public.

Fourth, the Association's argument that the County failed to follow statutory procedures for claiming the exemption repeats its principal waiver argument.

Finally, the trial court's decision to take judicial notice of a March 2003 Commission staff report had no prejudicial effect. The staff report illustrates applicable statutory law and duplicates other information in the administrative record regarding the submission of the EIR to the Commission.

## CONCLUSION

Here, the County unnecessarily prepared an EIR and the Association unnecessarily participated in the approval process applicable to EIR's. The Association understandably may have been dismayed that a significant administrative proceeding was conducted through error. Nevertheless, the court cannot provide a remedy to the Association without interfering with the statutory authority and established regulatory process of the Commission. Furthermore, the Association does not establish that it was prejudiced in any

material respect. The Association remains free to seek judicial review of any decision by the Commission regarding the County's LCP amendment and to challenge the adequacy of the environmental assessment supporting that decision. (§ 21080.5, subd. (g).)

The judgment is affirmed. Costs are awarded to respondent.

Yegan, Acting P. J., and Coffee, J., concurred.