47 Cal.4th 902 (2009)
SUNSET SKY RANCH PILOTS ASSOCIATION et al., Plaintiffs and Appellants,
v.
COUNTY OF SACRAMENTO et al., Defendants and Respondents;
JOHN M. TAYLOR et al., Real Parties in Interest and Respondents.
No. S165861.
Supreme Court of California.
December 28, 2009.
*904 Law Office of Lanny T. Winberry and Lanny T. Winberry for Plaintiffs and Appellants.
Robert A. Ryan, County Counsel, and Krista C. Whitman, Deputy County Counsel, for Defendants and Respondents.
Edmund G. Brown, Jr., Attorney General, Gordon Burns, Deputy State Solicitor General, J. Matthew Rodriquez, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Denise Ferkich Hoffman and Bruce Reeves, Deputy Attorneys General, for State Water Resources Control Board, Natural Resources Agency, California Environmental Protection Agency, California Integrated Waste Management Board, Santa Monica Mountains Conservancy and Department of Parks and Recreation as Amici Curiae on behalf of Defendants and Respondents.
Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Defendants and Respondents.
Taylor & Wiley, John M. Taylor, Kate Leary Wheatley and Matthew S. Keasling for Real Parties in Interest and Respondents.

OPINION
CORRIGAN, J.
The County of Sacramento declined to renew a conditional use permit for a privately owned airport. A mandamus petition seeking to prevent the airport's closure was denied. The Court of Appeal reversed, holding that the county's action amounted to a "project" subject to the *905 requirements of the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.; CEQA).[1]
The Court of Appeal erred because it misconstrued the nature of the project at issue. Declining to renew the conditional use permit was not a public project under CEQA, because the county did not "directly undertake[]" to close the airport. (§ 21065, subd. (a).) Instead, it decided not to reauthorize a private activity that required "the issuance . . . of a . . . permit." (§ 21065, subd. (c).) The airport operation was the "project" in question, and projects rejected by a public agency are specifically exempted from CEQA requirements. (§ 21080, subd. (b)(5).)

I. BACKGROUND[2]
This litigation pits the owner and users of the Sunset Sky Ranch Airport against nearby property owners and Sacramento County. Appellants are Daniel Lang, the airport owner, and the Sunset Sky Ranch Pilots Association (collectively, the Airport). Real parties in interest, John M. Taylor and the law firm of Taylor and Wiley, represent the neighboring property owners. They are aligned as respondents with Sacramento County and its board of supervisors (the County).
An airstrip began operating in 1934, when there were no applicable zoning regulations. Since 1968 a zoning ordinance has allowed airports in the area, if the operator obtains a conditional use permit (CUP). Lang acquired the property in 1971 and was granted a two-year CUP to operate a private airport, which was then used mainly for agricultural flights. In 1972, the Sacramento County General Plan was amended to allow a public use airport at the location, and Lang acquired a state airport permit for that purpose. The CUP expired in 1973. Lang did not apply for renewal, but continued operating the airport.
In 1989, Lang lost his business license because he was out of compliance with the zoning code. He appealed the denial and applied for a certificate of nonconforming use. The County upheld the license denial and refused to certify a nonconforming use, citing "considerable expansion" of the airport. (See Hansen Brothers Enterprises, Inc. v. Board of Supervisors (1996) 12 Cal.4th 533, 552 [48 Cal.Rptr.2d 778, 907 P.2d 1324].) It recommended that Lang obtain a CUP. Lang sued, and the County prevailed.
In 1999, the Airport applied for a 10-year CUP. The County, however, granted only a five-year permit, anticipating that an East Elk Grove Specific *906 Plan approved in 1996 might lead to urbanization of the area. The CUP required that "[t]he airport operator shall inform all airplane owners with tie-downs who intend to install or improve airport hangars on the property of the terms of this use permit, including the expiration date." The County approved a negative declaration under CEQA, finding that the CUP would have no significant effect on the environment. (See § 21064.) A challenge to the negative declaration was unsuccessful. (See Fat v. County of Sacramento (2002) 97 Cal.App.4th 1270 [119 Cal.Rptr.2d 402].)
In September 2004, two weeks before the 1999 CUP expired, the Sunset Sky Ranch Pilots Association applied for renewal. The County Project Planning Commission voted to approve a renewed CUP for two years, with no further extension. Real parties in interest filed an administrative appeal with the County Board of Supervisors (the Board). The Board upheld the appeal and denied renewal of the CUP. Its findings stated: "The action taken by the Board of Supervisors is not a revocation of an existing use permit but, rather, merely a decision not to renew a use that has already expired. It accordingly reflects a decision to not re-grant a permit for a use that has been determined to no longer be compatible with its surroundings. Furthermore, [CEQA] does not require that environmental analysis be conducted before an agency denies a project since a denial does not constitute a project for the purposes of CEQA."
The Board noted the development of new residential neighborhoods in the area, the local school district's difficulty in finding a suitable school site due to the airport's overflight zone, and the existence of other airport facilities at more appropriate locations. It declared that the denial of a CUP did not amount to action on any future developments that might be feasible with the elimination of the airport. The Board observed that such developments would themselves require environmental review before they could be approved.
The Airport sought a writ of mandate, injunctive relief, and monetary damages. Among other claims, it contended the County had failed to comply with CEQA because it had not analyzed the environmental impacts of closing the airport. The trial court denied relief. The Court of Appeal reversed, reasoning that the CUP denial was part of a County plan to enforce its zoning code by closing the airport and transferring pilots to other airports. Accordingly, the court concluded that the County's action amounted to a project requiring environmental review under CEQA.
We granted respondents' petition for review of the CEQA issue.

*907 II. DISCUSSION
(1) Whether an activity is regulated by CEQA is a question of law that may be decided on undisputed facts. (Muzzy Ranch Co. v. Solano County Airport Land Use Com. (2007) 41 Cal.4th 372, 382 [60 Cal.Rptr.3d 247, 160 P.3d 116].) When it enacted CEQA, the Legislature imposed certain limitations on its scope. CEQA applies only to activities that meet the definition of a "project" under the statute and its implementing administrative regulations.[3] (Muzzy Ranch, at p. 380.) In addition, the Legislature specifically exempted certain activities from environmental review. (Ibid.; § 21080, subd. (b).) These exemptions reflect legislative policy decisions. Although we construe CEQA broadly "`to afford the fullest possible protection to the environment within the reasonable scope of the statutory language,'" we do not balance the policies served by the statutory exemptions against the goal of environmental protection. (Napa Valley Wine Train, Inc. v. Public Utilities Com. (1990) 50 Cal.3d 370, 376 [267 Cal.Rptr. 569, 787 P.2d 976].) Indeed, the purposes of the various exemptions are not necessarily consistent with CEQA's general purposes. (Napa Valley Wine Train, at pp. 381-382.)
(2) A CEQA "project" falls into one of three categories of "activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment. . . ." (§ 21065.) Generally, the statute applies to actions that a public agency undertakes, funds, or approves.[4] Respondents contend the only applicable category here is the one for activities requiring governmental approval. (§ 21065, subd. (c).) Because the County refused to issue a CUP for continued airport operations, respondents claim this case falls squarely within the statutory exemption provided by CEQA for "[p]rojects which a public agency rejects or disapproves." (§ 21080, subd. (b)(5); see Main San Gabriel Basin Watermaster v. State Water Resources Control Bd. (1993) 12 Cal.App.4th 1371, 1380 [16 Cal.Rptr.2d 288].)
The Airport, on the other hand, argues that the cessation of operations resulting from denial of a CUP was itself a "project," because it was in effect *908 "[a]n activity directly undertaken by any public agency" as contemplated by section 21065, subdivision (a). The Airport emphasizes that "`[p]roject' means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment. . . ." (CEQA Guidelines, § 15378, subd. (a).) It urges us to follow the reasoning of the Court of Appeal, which decided that the "whole of the action" in this case included not just the denial of a CUP, but also a broader County decision to close the airport, shift its operations elsewhere, and enforce the zoning code. This approach, however, blurs the statutory distinction between projects "directly undertaken by [a] public agency" (§ 21065, subd. (a)) and projects submitted to an agency for approval (§ 21065, subd. (c)). It also conflicts with the statutory exemption of rejected projects from CEQA review.
(3) As the Court of Appeal recognized, the fact that the airport is privately owned and operated distinguishes this case from those in which closures of public facilities have been deemed "projects" for CEQA purposes. (See San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist. (2006) 139 Cal.App.4th 1356, 1380 [44 Cal.Rptr.3d 128]; Association for a Cleaner Environment v. Yosemite Community College Dist. (2004) 116 Cal.App.4th 629, 639 [10 Cal.Rptr.3d 560].) The CEQA Guidelines make it clear that "[p]rivate action is not subject to CEQA unless the action involves governmental participation, financing, or approval." (CEQA Guidelines, § 15002, subd. (c).) "The term `project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term `project' does not mean each separate governmental approval." (Id., § 15378, subd. (c).) Thus, the County's action on the Airport's application for a CUP renewal was not part of the "project," and closing the airport was not an "activity directly undertaken" by the County within the meaning of section 21065, subdivision (a).
(4) Instead, as respondents argue, the relevant "activity" for CEQA purposes was the proposed continued operation of the airport. That activity required the issuance of a permit, making it a private "project" under section 21065, subdivision (c). Notably, if the Airport had decided on its own to go out of business and allow the CUP to expire, there would have been no occasion for CEQA review by the County. The Airport's application for a renewal of the CUP did not place the County in the position of proceeding with a project, even though the County may have rejected the application as part of a plan to bring development in the area into conformity with the zoning code. It was the Airport that sought a new approval for its operations, and the County's denial of that project application was statutorily exempt from CEQA review under section 21080, subdivision (b)(5).
*909 (5) The Court of Appeal erred by deeming the consequences of a project denial to be part of the project itself. Its reasoning would effectively abrogate the statutory exemption for projects disapproved by a public agency. (§ 21080, subd. (b)(5).)[5] In many cases, disapproval of a proposed project could have possible environmental impacts associated with alternative courses of action. "Yet the Legislature has determined for reasons of policy to exempt project disapprovals from environmental review under CEQA. Our state legislators evidently concluded that public agencies should not be forced to commit their resources to the costly and time-consuming environmental review process for proposed private development projects slated for rejection, whatever the reason for agency disapproval. This court does not sit in judgment of the Legislature's wisdom in balancing such competing public policies. (Napa Valley Wine Train, Inc. v. Public Utilities Com.[, supra,] 50 Cal.3d 370, 376. . . .)" (Main San Gabriel Basin Watermaster v. State Water Resources Control Bd., supra, 12 Cal.App.4th at pp. 1383-1384.) As we noted in Napa Valley Wine Train, the very purpose of the statutory CEQA exemptions is to avoid the burden of the environmental review process for an entire class of projects, even if there might be significant environmental effects. (Napa Valley Wine Train, supra, 50 Cal.3d at p. 381.)
The Airport argues that a CUP renewal presents a special situation because there is already an existing project, so that denying a permit will result in alteration of the environmental status quo. However, the denial of a permit for a new project may also have foreseeable environmental effects, in that the same kind of development may be diverted to a different site. In any event, neither CEQA nor the CEQA Guidelines make any special provision for CUP denials. Furthermore, requiring CEQA review in such circumstances could be burdensome for applicants. "A lead agency may charge and collect a reasonable fee from any person proposing a project subject to this division in order to recover the estimated costs incurred by the lead agency in preparing a negative declaration or an environmental impact report for the project and for procedures necessary to comply with this division on the project." (§ 21089, subd. (a).) If review were required whenever the status quo is altered by the denial of a CUP, unsuccessful applicants would not only have to cease operations but also pay for environmental review of that undesired outcome. There is no reason to believe the Legislature intended to impose that cost on everyone who fails to obtain a CUP renewal.[6]

*910 III. DISPOSITION
The Court of Appeal's judgment is reversed.
George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.
NOTES
[1] Further statutory references are to the Public Resources Code.
[2] We accept the Court of Appeal's statement of the facts, which are undisputed. (Cal. Rules of Court, rule 8.500(c)(2).)
[3] Hereafter, we refer to these regulations, found in title 14 of the California Code of Regulations section 15000 et seq., as CEQA Guidelines. "In interpreting CEQA, we accord the CEQA Guidelines great weight except where they are clearly unauthorized or erroneous. (Citizens of Goleta Valley v. Board of Supervisors (1990) 52 Cal.3d 553, 564, fn. 3 [276 Cal.Rptr. 410, 801 P.2d 1161].)" (Muzzy Ranch Co. v. Solano County Airport Land Use Com., supra, 41 Cal.4th at p. 380, fn. 2.)
[4] The statutory categories are: "(a) An activity directly undertaken by any public agency. [¶] (b) An activity undertaken by a person which is supported, in whole or in part, through contracts, grants, subsidies, loans, or other forms of assistance from one or more public agencies. [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065.)
[5] "This division does not apply to any of the following activities: [¶] . . . [¶] (5) Projects which a public agency rejects or disapproves." (§ 21080, subd. (b).) In Main San Gabriel Basin Watermaster v. State Water Resources Control Bd., supra, 12 Cal.App.4th at pages 1381-1382, the court reviewed the legislative history of this exemption, which is not extensive, and concluded there was nothing to indicate that the Legislature did not mean what it said.
[6] An applicant may be required to pay for necessary preliminary review of a project before an agency acts on an application to renew a CUP. The exemption for rejected or disapproved projects does "not relieve an applicant from paying the costs for an EIR [environmental impact report] or negative declaration prepared for his project prior to the lead agency's disapproval of the project after normal evaluation and processing." (CEQA Guidelines, § 15270, subd. (c).) Such review may include discussion of a "no project" alternative. (Id., § 15126.6, subd. (e).)

However, the rule urged by the Airport would require routine review of the environmental effects of CUP denials, opening the door to the imposition of costs on applicants even where, as here, the agency has the information it needs to evaluate a renewal request. The exemption "is intended to allow an initial screening of projects on the merits for quick disapprovals prior to the initiation of the CEQA process where the agency can determine that the project cannot be approved." (CEQA Guidelines, § 15270, subd. (b); see Main San Gabriel Basin Watermaster v. State Water Resources Control Bd., supra, 12 Cal.App.4th at pp. 1380-1381.)