[No. G043709. Fourth Dist., Div. Three. June 7, 2011.]

DEL CERRO MOBILE ESTATES, Plaintiff and Appellant, v.
CITY OF PLACENTIA et al., Defendants and Respondents;
ORANGE COUNTY TRANSPORTATION AUTHORITY, Intervener and
Respondent.

COUNSEL

Palmieri, Tyler, Wiener, Wilhelm & Waldron, Michael H. Leifer and Erin Balsara Naderi for Plaintiff and Appellant.

Andrew V. Arczynski for Defendants and Respondents.

Rutan & Tucker, M. Katherine Jenson, Jeffrey A. Goldfarb and Peter J. Howell for Intervener and Respondent.

## OPINION

**ARONSON, J.**—Del Cerro Mobile Estates (Del Cerro) appeals from a judgment of dismissal after the trial court sustained a demurrer filed by the Orange County Transportation Authority (OCTA) and the City of Placentia and its city council (the City) to Del Cerro's first amended complaint for declaratory and injunctive relief and petition for writ of mandate. Del Cerro challenged the adequacy, under the California Environmental Quality Act (CEQA) (see Pub. Resources Code, § 21000 et seq.),[1] of the City's environmental impact report (EIR) concerning a planned railroad grade separation project. These projects "eliminate vehicle-rail conflicts" (*Natural Resources Defense Council, Inc. v. City of Los Angeles* (2002) 103 Cal.App.4th 268, 272 [126 Cal.Rptr.2d 615]) and include "the grade separation and other structures that actually separate the vehicular roadway from the railroad tracks," plus "all approaches, ramps, connections, drainage, and other construction required to make the grade separation operable and to effect the separation of grades" (Sts. & Hy. Code, § 2450, subd. (b)). OCTA had intervened in the

---

[1] Further statutory references are to the Public Resources Code unless noted.

lawsuit to point out that grade separation projects that eliminate railway crossings are expressly exempt from CEQA requirements (§ 21080.13), and therefore Del Cerro's CEQA-based challenge failed.

On appeal, asserting principles of waiver and estoppel, Del Cerro argues the City's reliance on CEQA to prepare the EIR should have prevented the City and OCTA from raising—and the trial court from recognizing—CEQA's inapplicability to grade separation projects. Additionally, relying on section 21080.13's phrasing in the singular rather than the plural, Del Cerro argues the CEQA grade separation exemption does not apply because this project involves several rail crossings instead of just one. As we explain, Del Cerro's waiver, estoppel, and statutory construction challenges have no merit. Finally, anticipating the City or OCTA will depart from environmental mitigation measures the City adopted in resolutions concerning the project, Del Cerro argues the trial court improperly sustained the demurrer because the complaint and mandate petition included allegations based on the City's resolutions, not just CEQA. This challenge is not ripe. Consequently, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Alleging a mobilehome park it owns and operates will be "impacted" in an undefined way by a "grade separation project, known as the Orange County Gateway Project" (project), Del Cerro sued the City seeking a declaratory judgment the City's approval of the project, including a faulty EIR, violated CEQA. The EIR specified the purpose of the project was to increase public safety, improve traffic, increase the efficiency of the local transportation system, reduce train noise and whistles, reduce emergency vehicle response times, and reduce air pollution from idling vehicles at rail crossings. The city council approved and certified the completed EIR by a resolution adopted in November 2008 and, on the same day, the city council adopted a related resolution rejecting some alternatives for implementing the project and selecting one known as "Alternative D," which consisted of constructing six railway overcrossings and one undercrossing. The adopting resolutions incorporated in attached findings "those feasible mitigation measures within the responsibility and jurisdiction of the implementing agency" and also adopted a mitigation monitoring and reporting program (MMRP). The MMRP required the City "to ensure compliance with each of the adopted mitigation measures in the MMRP because significant adverse environmental impacts

could result from the selected project if the mitigation measures are not implemented." Del Cerro sought injunctive and mandamus relief prohibiting any further proceedings until the City complied with CEQA. Del Cerro alleged that in preparing the EIR the City itself concluded CEQA applied to the project.

In January 2010, the parties stipulated to allow OCTA to intervene. That same month, for the first time since the City filed its January 2002 notice of preparation of an EIR, OCTA broached in a status conference the issue of an EIR exemption. OCTA claimed that under section 21080.13, "CEQA does not apply to railroad grade separation projects, such as the instant project, which eliminate existing grade crossings."

Based on section 21080.13, OCTA filed a demurrer to Del Cerro's complaint and mandate petition, which the City joined. Del Cerro responded with an amended complaint and petition "in Response to Demurrer." The amended filing retained claims that the City's EIR violated CEQA, but added new language asserting the City's alleged actions in distancing itself from the EIR and associated mitigation measures violated the City's own resolutions, as we explain in more detail below. Concluding it was "clear" section 21080.13's grade separation exemption applied to the project and unable "to figure out anything that could be pleaded that would be curative," the trial court sustained the demurrer without leave to amend. The trial court entered judgment and Del Cerro now appeals.

II

DISCUSSION

A. *Standard of Review*

"On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' [Citation.]" (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445 [130 Cal.Rptr.2d 392].) We turn to the pleadings for the operative facts, " ' "treat[ing] the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]" ' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171] (*Zelig*).)

B.  *Waiver and Estoppel*

Del Cerro asserts that by preparing and certifying the EIR as if CEQA applied, the City waived any right to later invoke a potential CEQA exemption. Del Cerro alleged the City knew of section 21080.13 in particular, having invoked it in other railroad grade separation projects, and therefore its failure to do so was "not inadvertent," but rather to ensure environmental mitigation it deemed necessary. The City, however, explained to the trial court it conducted the EIR because it believed alternatives under consideration by the city council would not qualify for CEQA exemption. For example, "Alternative C" involved lowering the railway into a "long trench" or "corridor along [the city's] entire southerly boundary," instead of constructing in Alternative D seven enumerated grade separation over- and undercrossings. The City concluded the lengthy corridor contemplated in Alternative C exceeded section 21080.13's grade separation exemption.[2] Del Cerro complains the City did not provide this rationale for undertaking the EIR until the demurrer hearing and argues estoppel barred the City from changing its original position that CEQA applied.

Where the facts are undisputed, as here, "the scope of a particular CEQA exemption . . . presents 'a question of law, subject to de novo review by this court.'" (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 693 [46 Cal.Rptr.3d 387] (*Save Our Carmel River*).) Similarly, while "the determination of either waiver or estoppel" is "[g]enerally . . . a question of fact," when "the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158].) Here, like the trial court, we agree the City could defend itself against Del Cerro's claims the EIR was inadequate under CEQA by asserting CEQA did not apply. (See *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1386 [44 Cal.Rptr.3d 128] (*San Lorenzo*) [" 'Where a project is . . . exempt, it is not subject to CEQA requirements and "may be implemented without any CEQA compliance whatsoever" ' "].)

Specifically, the City's change in position did not preclude it from invoking the exemption. "Under the doctrine of equitable estoppel, a party cannot deny *facts* that it intentionally led another to believe if the party asserting estoppel is ignorant of the true facts, and relied to its detriment." (*Santa Barbara County Flower & Nursery Growers Assn. v. County of Santa Barbara* (2004) 121 Cal.App.4th 864, 876 [17 Cal.Rptr.3d 489], italics added

---

[2] Section 21080.13 specifies that CEQA "shall not apply to any railroad grade separation project which eliminates an existing grade crossing or which reconstructs an existing grade separation."

(*Santa Barbara County*).) But as the court in *Santa Barbara County* observed, the particular CEQA exemption at issue there, section 21080.5, "is a statute, not a fact." (*Santa Barbara County*, at p. 876.) The court held estoppel did not prevent a county from raising the statutory exemption for the first time *after* a party began litigation challenging the adequacy of the county's EIR under CEQA. The court observed, "Nothing in the record shows that the [challenger] was unaware of the exemption, or that the County's decision to prepare an EIR prevented the [challenger] from ascertaining the applicable law." (121 Cal.App.4th at p. 876.) The court expressly held, "The preparation of an EIR by the County did not waive the exemption . . . ." (*Id.* at p. 869.) So it is here. The grade separation exemption is embodied in a statute and nothing suggests estoppel should apply because the City somehow prevented Del Cerro from becoming aware of the exemption.

■ The *Santa Barbara County* court also explained that "estoppel cannot be applied against a governmental entity if it would nullify a policy adopted for the benefit of the public." (*Santa Barbara County, supra*, 121 Cal.App.4th at p. 876.)  ■  As we explain in more detail below, the Legislature in adopting section 21080.13 has declared public policy concerning the importance of railway grade separation projects, weighing public safety, traffic, environmental, and other concerns. We may not second-guess the Legislature's determination an exemption is appropriate. (See, e.g., *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 628 [60 Cal.Rptr.3d 39] ["The Legislature declares state public policy, not the courts"].)

Del Cerro attempts to distinguish *Santa Barbara County* on grounds the county there, unlike the City here, did not serve as a "lead agency" with final authority to accept or reject the EIR. (See *Santa Barbara County, supra*, 121 Cal.App.4th at p. 875.) The distinction is immaterial. There, the California Coastal Commission directed the county to submit a proposed amendment to its local coastal plan concerning the development of agricultural greenhouse facilities. The commission specifically requested "an environmental assessment of such development," a requirement the county initially chose to meet by preparing and certifying an EIR. After an association of growers challenged the EIR's compliance with CEQA, the county responded that "the EIR had been prepared unnecessarily because the approval of LCP amendments by the Commission is exempt from the EIR requirements of CEQA." (*Santa Barbara County, supra*, 121 Cal.App.4th at p. 868; see *id.* at p. 872 [noting express CEQA exemption for commission's regulatory program, including its environmental review process]; § 21080.5, subd. (a).) Del Cerro contends *Santa Barbara County* is inapposite because the commission, not the county,

held the CEQA exemption, and the reviewing court did not reach the issue of whether the commission had waived the exemption by accepting the county's EIR as its environmental assessment, since the issue was not ripe and the commission was not a party to the grower's lawsuit. (*Santa Barbara County*, at pp. 869, 875.)

Del Cerro's distinction is not persuasive because the relevant aspect of *Santa Barbara County* directly rebuts Del Cerro's claim that a local government's decision to conduct an EIR precludes it from invoking an exemption. Simply put, "The preparation of an EIR by the County did not waive the exemption . . . ." (*Santa Barbara County, supra*, 121 Cal.App.4th at p. 869.) We see no reason for a different result here, particularly given the breadth of the section 21080.13 exemption. While the exemption in *Santa Barbara County* depended on a substitute environmental review process by the commission, the exemption here is broader, omitting reference to any substitute process. Specifically, the Legislature has determined in section 21080.13 that *no* environmental review is necessary, exempting from CEQA "any railroad grade separation project which eliminates an existing grade crossing." (§ 21080.13; see *Great Oaks Water Co. v. Santa Clara Valley Water Dist.* (2009) 170 Cal.App.4th 956, 966, fn. 8 [88 Cal.Rptr.3d 506] ["statutory exemptions are absolute, which is to say that the exemption applies if the project fits within its terms"].) Thus, the trial court was required to give effect to the exemption upon demurrer if no facts in Del Cerro's complaint suggested a scenario in which the exemption did not apply. (See generally *Ankeny v. Lockheed Missiles and Space Co.* (1979) 88 Cal.App.3d 531, 537 [151 Cal.Rptr. 828] ["a pleading must allege facts and not conclusions . . . ," "conclusionary allegations . . . , without facts to support them, are ambiguous"].)

Del Cerro attempts to circumvent its burden to plead facts by pointing to the City's failure to make a formal determination in the underlying process that the exemption applied, arguing the City impliedly concluded the opposite by conducting the EIR pursuant to CEQA. Del Cerro contends the City's failure to make an express exemption finding rendered the administrative record as reflected in the pleadings inadequate to determine the grade separation exemption applied. In effect, Del Cerro insists the City is responsible for an asserted lack of facts to determine whether the project fits within the grade separation exemption, and therefore was not entitled to demurrer.

■ This argument fails for three reasons. First, it merely restates Del Cerro's failed waiver and estoppel claim. (*Santa Barbara County, supra*, 121 Cal.App.4th at p. 876 ["the Association's argument that the County failed to

follow statutory procedures for claiming the exemption repeats its principal waiver argument"].) Second, generally no factfinding hearing is required to determine whether a proposed activity is exempt from CEQA. (See *CalBeach Advocates v. City of Solana Beach* (2002) 103 Cal.App.4th 529, 539 [127 Cal.Rptr.2d 1]; see also *Save Our Carmel River, supra,* 141 Cal.App.4th at p. 693 ["City's determination that the project was exempt from compliance with CEQA requirements was a quasi-legislative action, where no administrative hearing was held or required"].) Exceptions exist (see, e.g., § 21083.3 [specifying a hearing must be held and prerequisite findings made before certain residential projects may be deemed exempt from CEQA]), but this is not one of them, since the grade separation exemption in section 21080.13 does not specify any hearing is required. Accordingly, Del Cerro's reliance on *Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1407–1408 [43 Cal.Rptr.2d 170], is misplaced because that case involved the hearing and findings mandated as a condition for the exemption in section 21083.3. As acknowledged in *Gentry,* "In an appropriate case, undisputed facts in the record might demonstrate that a statutory exemption applies as a matter of law." (*Gentry,* at p. 1407.)

Third, and most importantly, the City's failure to make an early exemption determination did not result in an uncertain administrative record preventing demurrer. There are no *facts* in dispute: Del Cerro admitted the plan for six overcrossings and one undercrossing constituted a railway grade separation project, but disputed the scope, as a matter of law, of section 21080.13's exemption. Del Cerro puts it this way in its reply brief: "Del Cerro has never argued that this is not a grade separation project. What Del Cerro *has* argued is that the [p]roject is much bigger than that which fits within the exemption because the project involves more than just one single grade separation." (Original italics.)

But as noted above, "the scope of a particular CEQA exemption . . . presents 'a question of law . . . .' " (*Save Our Carmel River, supra,* 141 Cal.App.4th at p. 693.) Equitable estoppel, in contrast, turns on the facts surrounding a party's conduct rather than on the terms of a statute. (*Santa Barbara County, supra,* 121 Cal.App.4th at p. 876.) Consequently, since the City did nothing to prevent Del Cerro from learning of section 21080.13 or to mislead Del Cerro as to the relevant facts—which are undisputed—Del Cerro's waiver and estoppel arguments have no merit. Del Cerro's reliance on our case law concerning these principles is therefore misplaced. (See *Kunec v. Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 524–525 [64 Cal.Rptr.2d 143] [agency could not repudiate existence of a conflict by two of its voting members when it no longer suited city, which had improperly circumvented conflict]; *Boelts v. City of Lake Forest* (2005) 127 Cal.App.4th 116, 130 [25 Cal.Rptr.3d 164] [declining to reach issue of appellate estoppel; city on appeal had disavowed necessity of blight finding, but the trial court

correctly determined finding was necessary and unsupported by evidence].) Because Del Cerro's estoppel claims are unavailing to short circuit the demurrer on factual grounds, we now turn to its argument the trial court misinterpreted section 21080.13 as a matter of law.

## C. *Statutory Construction*

Section 21080.13 provides in full: "This division shall not apply to any railroad grade separation project which eliminates an existing grade crossing or which reconstructs an existing grade separation." The specified division is division 13, Environmental Quality, codifying CEQA. (§ 21000 et seq.) Del Cerro chains its argument to grammar: because the terms "grade crossing" and "grade separation" are singular, the CEQA exemption in section 21080.13 does not apply to projects eliminating more than one grade crossing or reconstructing more than one existing grade separation. We are not persuaded.

■ Statutory interpretation is a question of law (*Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447, 451 [133 Cal.Rptr.2d 465]) in which we ascertain the Legislature's intent " 'with a view to effectuating the purpose of the statute, and construe the words of the statute in the context of the statutory framework as a whole' " (*Holcomb v. U.S. Bank Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1504 [29 Cal.Rptr.3d 578]). A litigant may not make a "fortress out of the dictionary" (*Cabell v. Markham* (2d Cir. 1945) 148 F.2d 737, 739 (Hand (Learned), J.)), nor similarly employ the rules of grammar (see, e.g., *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017 [22 Cal.Rptr.3d 876, 103 P.3d 276] [neither grammar nor canons of construction dispositive in construing statutes, but rather are " 'guides to help courts determine likely legislative intent' "]).

Here, the Legislature's intent could not be clearer. In the urgency finding for Senate Bill No. 549 (1981–1982 Reg. Sess.) enacting section 21080.13, the Legislature stated: "Due to increasing population density in regions where railroad tracks cross highways at grade and because of the need to relieve congestion on those highways as soon as possible, it is necessary that the act take effect immediately." (Stats. 1982, ch. 58, § 4, p. 190.) The Legislature's urgent intent to eliminate grade crossings is not served by Del Cerro's restrictive construction. Moreover, section 13 answers Del Cerro's narrow grammatical argument by specifying that in the Public Resources Code, including section 21080.13, "The singular number includes the plural, and the plural the singular." (§ 13.)

■ Del Cerro argues CEQA exemptions must be construed narrowly to harmonize with CEQA's environmental protection purpose. But as our

Supreme Court has explained, it is incorrect "to assume that a harmony must exist between CEQA's general purpose and the purposes of each of its statutory exemptions. The exemptions reflect a variety of policy goals. . . . As a practical matter, the statutory exemptions have in common only this: The *Legislature* determined that each promoted an interest important enough to justify forgoing the benefits of environmental review." (*Napa Valley Wine Train, Inc. v. Public Utilities Com.* (1990) 50 Cal.3d 370, 381–382 [267 Cal.Rptr. 569, 787 P.2d 976], original italics, superseded by statute on another ground as stated in § 21080.04, subd. (b).) While California's Natural Resources Agency may categorize and promulgate other exemptions for projects generally not affecting the environment, which must be construed narrowly (*San Lorenzo, supra,* 139 Cal.App.4th at p. 1382), "*statutory* exemptions have an absolute quality not shared by categorical exemptions: a project that falls within a statutory exemption is not subject to CEQA even if it has the potential to significantly affect the environment" (*Communities for a Better Environment v. California Resources Agency* (2002) 103 Cal.App.4th 98, 128–129 [126 Cal.Rptr.2d 441], italics added). Thus, courts "do not balance the policies served by the statutory exemptions against the goal of environmental protection." (*Sunset Sky Ranch Pilots Assn. v. County of Sacramento* (2009) 47 Cal.4th 902, 907 [102 Cal.Rptr.3d 894, 220 P.3d 905].)

■ Accordingly, the trial court did not err in rejecting Del Cerro's narrow interpretation of section 21080.13, concluding instead that the exemption foreclosed Del Cerro's causes of action challenging the City's EIR for asserted noncompliance with CEQA. By virtue of the exemption, CEQA did not apply as a matter of law.

## D. *Del Cerro's Amended Claims Were Not Ripe*

Finally, Del Cerro asserts it stated four non-CEQA causes of action by pointing in its amended complaint to an alleged rift between the City and OCTA concerning implementation of the project. Del Cerro notes that in the November 2008 resolutions approving the project, the city council adopted mitigation measures to combat traffic, air quality, and economic disruption concerns arising from the project. Del Cerro asserted without any specificity in its amended complaint that OCTA, since filing its joint demurrer with the City, "ha[d] made public its intention to significantly change and accelerate the Project" and thereby "disregard and abandon" the mitigation measures adopted by the City. Del Cerro pointed to a subsequent resolution the city council adopted in February 2010 opposing the alleged acceleration plan, finding it "*could* include the simultaneous construction of all seven (7) grade crossings within the cities of Fullerton, Anaheim and Placentia" (italics

added) and that "the closures of these major arterial roads will displace in excess of 120,000 vehicle trips per day[,] adversely impacting the traffic, air quality and economic vitalities of the cities of North Orange County including Anaheim, Brea, Fullerton, La Habra, Placentia and Yorba Linda for the duration of the Project . . . ." According to Del Cerro, the city council's February 2010 resolution reiterated a preference articulated in the November 2008 resolutions for "sequential construction of the grade crossing[s] over a multiple year period." But Del Cerro complains that by pursuing the demurrer with OCTA to throw out Del Cerro's suit, the City violated its own binding resolutions, illegally rejecting the mitigation measures it adopted.

Specifically, Del Cerro asserts its first and 11th through 13th causes of actions in its amended pleading stated viable non-CEQA claims. Del Cerro sought in the first cause of action "[a] writ of mandate . . . prohibiting [the City] from proceeding in any manner with the Project without first complying with the requirements of CEQA *and their own resolutions approving the Project.*" (Italics added.) Del Cerro's 11th cause of action similarly sought mandate relief while incorporating prior allegations and alleging merely that the City "failed to proceed in the manner required by law," presumably by failing to adhere to its resolutions. The 12th cause of action is captioned "injunctive relief" and seeks that remedy "[a]s a result of [the City's] violations of CEQA, *failure to comply with their own findings, determinations and resolutions, and failure to proceed as otherwise required by law* . . . ." (Italics added.) The 13th cause of action is labeled "declaratory relief," seeking a declaration the City "may not proceed with the Project without first complying with the provisions of CEQA *and their own resolutions approving the Project*"—more specifically, a declaration that the City and city council "are in violation of their own contrary findings, determinations and resolutions, which are binding on all persons, including Respondents."[3] (Italics added.)

By their terms, these four causes of action intermix CEQA claims—which have no place in light of the CEQA exemption in section 21080.13—with non-CEQA claims. But a more fundamental flaw undercuts the asserted non-CEQA causes of action: Del Cerro never explains how they are ripe as to OCTA or even the City. The amended complaint identifies the City and the city council as defendants and respondents, but does not name OCTA in this capacity. In any event, Del Cerro never explains how the City's resolutions or

---

[3] We deny Del Cerro's request for judicial notice of the City's resolutions and related documentation because, on demurrer, the trial court and reviewing court turn to the pleadings for the operative facts. (*Zelig, supra*, 27 Cal.4th at p. 1126.) Respondents' motion to strike the reply brief for referring to matters outside the record, specifically the resolutions as a basis for non-CEQA claims, is similarly denied given Del Cerro's reference in the pleadings to the resolutions.

their mitigation components are binding on OCTA, such that the claims in the four specified causes of action for allegedly illegally disregarding the City's resolutions apply to OCTA.

■ Even assuming the resolutions bind OCTA in some fashion—we express no opinion on this issue—the ripeness problem persists. That is, Del Cerro never alleged OCTA did anything except to float a potential course of action, i.e., acceleration of the project. But in deference to the fluidity inherent in the spheres of executive and legislative action, a court may not assume an official will refuse to take required action, despite an express announcement of planned refusal. (*Northridge etc. Water Dist. v. McDonell* (1958) 158 Cal.App.2d 123, 127–129 [322 P.2d 25].) "Mandamus will not lie to compel the performance of future acts . . . ." (*Ibid.*)

■ Nor does Del Cerro create a legal dispute merely by asserting an "actual controversy" exists, as Del Cerro did as a predicate for its declaratory (and presumably also injunctive) relief action. Del Cerro never alleged OCTA or the City took any steps towards *implementing* the project in a manner inconsistent with any of the City's resolutions. While a party may seek declaratory judgment before an actual invasion of rights occurs, it still must demonstrate the controversy is justiciable. The ripeness necessary in the declaratory judgment statute's "actual controversy" requirement (Code Civ. Proc., § 1060) "does not embrace controversies that are 'conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 [120 Cal.Rptr.3d 665] (*Wilson*).)

In essence, Del Cerro sought to obtain an advisory opinion concerning the effect of the City's resolutions, including their mitigation measures, which the City never repudiated. While OCTA may have considered it prudent to weigh alternative implementation plans, merely contemplating action and marshalling legal arguments to support *potential* action does not constitute an actual controversy. (Cf. *Wilson, supra,* 191 Cal.App.4th at p. 1584 ["The City has taken no steps to acquire Wilson's property, and, indeed, it may never do so"].) In sum, Del Cerro's claims in resisting demurrer about accelerated plans that might *or might not* occur in the future were not ripe. Because Del Cerro never provided a timetable or other evidence its claims would soon ripen, the trial court did not err in sustaining demurrer without leave to amend. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 173 [188 Cal.Rptr. 104, 655 P.2d 306] [courts will "not be drawn into disputes which depend for their immediacy on speculative future events"].)

## III

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

Bedsworth, Acting P. J., and Fybel, J., concurred.