Filed 12/20/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| MISSION PEAK CONSERVANCY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE WATER RESOURCES CONTROL BOARD, <br><br> Defendant and Respondent; <br><br> CHRISTOPHER GEORGE et al., <br><br> Real Parties in Interest and Respondents. | A162564 <br><br> (Alameda County Super. Ct. No. RG19037369) <br><br> **ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

The opinion filed on December 15, 2021, shall be MODIFIED as follows:

1.      The last paragraph on page 8, in Discussion B.1., is replaced in its entirety, as follows:

> Third, and finally, Mission Peak offers a somewhat confusing variation on its second argument. Mission Peak contends that, even assuming the board's "approval of [the Georges'] registration [w]as a ministerial act," the board's action nonetheless violated CEQA because the Georges' project "did not meet the requirements for a small domestic

1

use" and is "not supported by substantial evidence." Again, this is simply an argument that the board made an erroneous ministerial decision – which, as we have explained, is not a basis for a CEQA claim. Mission Peak mistakenly relies on *Sierra Club*, which states that, to the extent a CEQA exemption turns on an agency's factual determinations, courts review those determinations for substantial evidence. (*Sierra Club*, 11 Cal.App.5th at p. 24; see, e.g., *Apartment Assn. of Greater Los Angeles v. City of Los Angeles* (2001) 90 Cal.App.4th 1162, 1173-1174.) The exemption here does not turn on factual determinations but, instead, on the board's lack of discretionary legal authority.

The modification effects no change in the judgment.

Date: _____12/20/2021_____     ___SIMONS, J.___, Acting P.J.

2

Alameda County Superior Court Case No. RG19037369. The Honorable Frank Roesch.

Law Offices of Paul B. Justi and Paul B. Justi for Petitioners and Appellants.

Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General, Myung J. Park and Kathryn M. Megli, Deputy Attorneys General, for Respondent.

Colantuono, Highsmith & Whatley, Michael G. Colantuono; Levin and Carmen A. Brock for Real Parties in Interest and Respondents.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MISSION PEAK CONSERVANCY et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>STATE WATER RESOURCES CONTROL BOARD,<br><br>     Defendant and Respondent;<br><br>CHRISTOPHER GEORGE et al.,<br>     Real Parties in Interest and<br>     Respondents. | A162564<br><br>(Alameda County<br>Super. Ct. No. RG19037369) |

Mission Peak Conservancy and Kelly Abreau (collectively "Mission Peak") sued the State Water Resources Control Board, alleging that it violated the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) by granting a small domestic use registration to Christopher and Teresa George without first conducting an environmental review. The trial court sustained the board's demurrer without leave to amend, holding that the registration was exempt from CEQA as a ministerial act (Pub. Resources Code, § 21080, subd. (b)(1)). We affirm.

**BACKGROUND**

**A.**

The Water Rights Permitting Reform Act of 1988 provides a streamlined process for acquiring a right to appropriate relatively small amounts of water for domestic or other specified uses. (Wat. Code, §§ 1228-1229.1[1]) Under this right, a person may divert up to 10 acre-feet of water per year from a stream into a storage facility, such as a pond or tank. (§§ 1228.1, subd. (b)(1), 1228.2, subd. (a)(1).)

An eligible person obtains the right by (1) registering the use with the board, (2) paying a fee, and (3) subsequently putting the water to "reasonable and beneficial use." (§§ 1228.2, subd. (a)(1), 1228.3, subd. (b).) The registration form requires the registrant's contact information; details about the nature, amount, and location of the proposed use, diversion, and storage; a certification that the registrant has provided the registration information to the Department of Fish and Wildlife and will comply with any conditions that the department imposed; and a copy of any conditions imposed by the department.[2] (§ 1228.3, subd. (a).) The registration is deemed completed when the board receives a substantially compliant form and the fee. (§ 1228.3, subd. (b).)

A completed registration gives the registrant a "priority of right as of the date of completed registration to take and use" the amount of water shown on the registration form. (§ 1228.4, subd. (a).) Once registered, the right remains in effect unless forfeited or revoked under specified circumstances. (§ 1228.4, subd. (b).)

---

[1] Undesignated statutory references are to the Water Code.

[2] In practice, as the parties acknowledge, the registrant may allow the board to submit the information to the department on the registrant's behalf, which was apparently the case here.

The board is authorized to set general terms and conditions, applicable to all registrations. (Wat. Code, § 1228.6, subd. (a); see State Water Resources Control Board Division of Water Rights 2016 General Conditions To Be Applied To Small Domestic Use and Livestock Stockpond Use Registrations <https://www.waterboards.ca.gov/waterrights/publications_forms/ forms/docs/sdulsu_conditions.pdf> [as of Dec. 15, 2021.].) Given its lack of discretion over individual permits, the board has designated the registration process generally to be exempt from CEQA as a ministerial decision. (Cal. Code Regs., tit. 23, § 3730, subd. (e); Guidelines, Cal. Code Regs., tit. 14, § 15268, subd. (c) [references to the "Guidelines" are to the CEQA Guidelines, Cal. Code Regs., tit. 14, § 15000 et seq.].)

**B.**

Mission Peak's second amended petition alleges that the Georges registered a small domestic use on a property in Alameda County. It is apparently undisputed that the Georges' registration form, on its face, met the program requirements.

Mission Peak alleges, however, that the form was replete with false information. The Georges allegedly claimed they had drained and cleaned a pre-existing pond when, in reality, they had "significantly altered and obstructed the course of a stream and its bed by the massive expansion of the pond and damming of the stream." The Georges falsely stated that all construction was complete when, in fact, they subsequently graded and excavated a hillside, constructing a quarter-mile-long road with culverts to channel stormwater runoff into the lake.

The petition further alleges that, during the registration process, the board conducted a site inspection, took photographs, prepared a report, and reviewed historical and contemporary aerial photographs, as well as a map provided by the Georges indicating that the lake had a capacity of 18 acre-feet. The board forwarded the Georges' (allegedly inaccurate) registration

3

information to the Department of Fish and Wildlife, which declined to impose conditions. The board then "approved" the registration even though it knew, or should have known, that the project did not qualify for a small domestic use registration.[3]

The petition alleges a single cause of action for CEQA violations. Mission Peak contends the registration process is discretionary, not ministerial, and therefore is not exempt from CEQA. It seeks a writ of mandate revoking the Georges' small domestic use registration and mandating that the board conduct an environmental review of the project.

## DISCUSSION

## A.

Where, as here, the trial court has sustained a demurrer, " 'this court determines whether the [petition] states facts sufficient to constitute a cause of action.' " (*Save Berkeley's Neighborhoods v. Regents of University of California* (2020) 51 Cal.App.5th 226, 235 (*Save Berkeley's Neighborhoods*).) We accept as true properly pleaded facts, " 'but not contentions, deductions, or conclusions of fact or law.' " (*Id.* at pp. 234-235.)

We generally review the trial court's interpretation of CEQA de novo, keeping in mind the Legislature's requirement " 'to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' " (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1184 (*Union of Medical Marijuana Patients*).) When interpreting a statutory exemption, however, we do not balance the goal of environmental protection against the legislative policies underlying the exemption. (*Sunset Sky Ranch Pilots Assn. v. County of Sacramento* (2009) 47 Cal.4th 902, 907.)

---

[3] In reciting Mission Peak's allegations and contentions, we do not suggest that they accurately describe the program requirements.

The point of a statutory exemption is to avoid the burdens of environmental review for a class of projects, regardless of potential environmental damage. (*Id*. at p. 909.) Finally, we give " 'great weight' " to the Secretary for Natural Resources' interpretation of CEQA in the Guidelines. (*Union of Medical Marijuana Patients, supra,* 7 Cal.5th at p. 1184.)

**B.**

**1.**

When CEQA applies to a project, it generally requires a public agency to analyze the project's environmental impacts and to mitigate or avoid significant impacts when feasible. (See *Save Berkeley's Neighborhoods, supra,* 51 Cal.App.5th at p. 235; Guidelines, § 15002.) The question here is whether the statute applies at all.

CEQA applies only to "discretionary projects proposed to be carried out or approved by public agencies." (Pub. Resources Code, § 21080, subd. (a).) "A project is discretionary when an agency is required to exercise judgment or deliberation in deciding whether to approve an activity." (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 489 (*POWER*), citing Guidelines, § 15357; see also Guidelines, § 15002, subd. (i).)

On the flip side, projects that do not require discretion— ministerial projects—are exempt from CEQA. (See Pub. Resources Code, § 21080, subd. (b)(1).) Ministerial projects involve "little or no personal judgment by the public official as to the wisdom or manner of carrying out the project." (Guidelines, § 15369.) The public official simply applies statutes, regulations, or other fixed standards to the facts as presented, like a checklist. (*Ibid*.; *POWER, supra,* 10 Cal.5th at pp. 489, 493.) Conducting an environmental review would be a meaningless exercise because the agency has no discretion to reduce a project's

environmental damage by requiring changes. (*POWER*, *supra*, at p. 494; Guidelines, § 15040, subds. (b)-(c).)

**2.**

Mission Peak asserts that the board's registration process, as applied to the Georges' registration, was discretionary rather than ministerial. We disagree.

Whether an agency's action is discretionary or ministerial turns on the applicable substantive law. (See Guidelines, § 15002, subd. (i)(2); *POWER*, *supra*, 10 Cal.5th at p. 493.) The test is whether the law governing the agency's decision to approve the project gives it authority to require changes that would lessen the project's environmental effects. (*POWER*, *supra*, at p. 493.) If so, the project is discretionary; if not, the project is ministerial.

Mission Peak points to no statute that grants the board authority to place conditions on the Georges' registration to lessen its environmental effects. The only conditions the board may impose are general conditions applicable to all registrations. (§ 1228.6, subd. (a); see also § 1228.6, subd. (b) ["Immediately upon registration," the board "shall provide the registrant with a written document setting forth the conditions required by this section."].) The registration is automatically deemed complete, and the registrant obtains the right to take and use the specified amount of water, when the board receives a substantially compliant registration form along with the registration fee. (§§ 1228.3, subd. (b), 1228.4, subd. (a).) The board determines whether a registration is compliant essentially by applying a checklist of fixed criteria, such as whether the registration form contains the required information (§ 1228.3, subd. (a)); whether the stream is fully appropriated (§ 1228.2, subd. (d)); whether the Department of Fish and Wildlife has been notified and imposed conditions (§ 1228.3, subd. (a)(7)); and whether the fee has been paid. (§ 1228.3, subd. (b).) The registration is effective as of the

6

date of the form, and it remains effective until and unless the water right is forfeited, abandoned, or revoked.  (§§ 1228.3, subd. (b), 1228.4, subd. (b).)  The process is ministerial.[4]

Mission Peak makes three arguments.  Its primary argument is that a different agency, the Department of Fish and Wildlife, has discretion to impose conditions that could ameliorate the project's environmental impacts.  (See Fish & G. Code, § 1602.)  But the board has no authority to modify or shape those conditions.  The department performs its review before the board's registration process is completed.  (See Wat. Code, § 1228.3, subd. (a)(7).)  It is simply an item on the board's checklist. (*Ibid*.)  If the department has set any conditions, the board must accept them.  (Wat. Code, § 1228.6, subd. (a)(2); see *Sierra Club v. County of Sonoma* (2017) 11 Cal.App.5th 11, 29-30 (*Sierra Club*) [where an agency was required to impose a setback condition as determined by a wetlands biologist, the agency's issuance of a permit was ministerial, even though the biologist had discretion, because the agency was required to accept the biologist's determination].)  The department's discretion cannot be imputed to the board.

Mission Peak mistakenly relies on *POWER*, *supra*, 10 Cal.5th 479.  In *POWER*, our Supreme Court considered a county ordinance classifying all well drilling permits as ministerial.  (*Id*., at pp. 495-496.)  The court found that, at least in some cases, the ordinance gave the county discretion to require changes that would mitigate environmental impacts; so a blanket classification was inappropriate.  (*Id*., at pp. 496-498, 500-501; see Guidelines,

---

[4] If the Georges did misrepresent the project, the Legislature has provided a remedy: the board may revoke a registration if the registrant knowingly made false statements or concealed material facts in the registration form.  (§ 1228.4, subd. (b)(2).)  Mission Peak does not contest the board's position that its authority to pursue enforcement actions is discretionary.  (See § 1228.6, subd. (c) [authorizing enforcement actions].)

§ 15268, subd. (d).) *POWER* examined the authority of one agency and concluded that it had discretion over some projects. The case does not remotely suggest that an agency lacking discretionary authority is required to conduct CEQA review because a different agency had such authority.

Mission Peak's second argument fares no better. Mission Peak contends that the project did not satisfy the requirements for a small domestic use registration because the Georges misrepresented facts about the size of the pond and other features. Accordingly, it reasons, the board had discretion, in a colloquial sense, to deny the project or to tell the Georges that they must change the project to meet the program requirements. Mission Peak misunderstands the test. The test is whether the board had the legal authority to impose environmentally beneficial changes as conditions on the project. (*POWER*, *supra*, 10 Cal.5th at pp. 493-494; Guidelines, § 15002, subd. (i)(2.) Mission Peak points to no such authority. Instead, it argues the board misapplied the fixed criteria to the facts and made an erroneous ministerial decision. CEQA does not regulate ministerial decisions—full stop. (Pub. Resources Code, § 21080, subd. (b)(1).)

Third, and finally, Mission Peak offers a somewhat confusing argument based on a statement in *Sierra Club*, *supra*, 11 Cal.App.5th at pp. 23-24. Mission Peak contends that, assuming the process is ministerial, the question then becomes whether substantial evidence supports the board's allegedly erroneous decision to approve the registration. *Sierra Club* does not say that. It simply notes that when a CEQA exemption turns on an agency's factual findings, courts review those findings for substantial evidence. (*Ibid.*; see, e.g., *Apartment Assn. of Greater Los Angeles v. City of Los Angeles* (2001) 90 Cal.App.4th 1162, 1173-1174.) Mission Peak identifies no such findings.

8

Mission Peak does not explain how it could amend its petition to state a viable cause of action. (See *Reeder v. Specialized Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 805; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 892.) The trial court properly sustained the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed.

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

NEEDHAM, J.

A162564

Alameda County Superior Court Case No. RG19037369. The Honorable Frank Roesch.

Law Offices of Paul B. Justi, Paul B. Justi, for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Robert W. Byrne, Senior Assistant Attorney General, Myung J. Park, Supervising Deputy Attorney General, and Kathryn M. Megli, Deputy Attorney General, for Defendant and Respondent.

Colantuono, Highsmith & Whatley, PC, Michael G. Colantuono, Levin and Carmen A. Brock, for Real Parties in Interest and Respondents.

11