Filed 9/18/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RESPECT LIFE SOUTH SAN FRANCISCO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SOUTH SAN FRANCISCO,<br><br>    Defendant and Respondent;<br><br>PLANNED PARENTHOOD MAR MONTE, INC.,<br><br>    Real Party in Interest and Respondent. | A145992<br><br>(San Mateo County<br>Super. Ct. No. 524437) |

The City of South San Francisco approved a conditional-use permit allowing an office building to be converted to a medical clinic for use by Planned Parenthood Mar Monte, Inc. (Planned Parenthood), the real party in interest. The City determined that its consideration of the permit was categorically exempt from the California Environmental Quality Act, Public Resources Code section 21000 et sequitur (CEQA).[1] Respect Life South San Francisco (Respect Life) and several individuals challenged the City's determination by petitioning for a writ of mandate in the trial court. The court denied the petition.

On appeal, Respect Life contends that the permit's consideration is not exempt from CEQA because the unusual-circumstances exception to CEQA's categorical

---

[1] Unless indicated otherwise, all further statutory references are to the Public Resources Code.

1

exemptions applies. We are not persuaded. By pointing only to evidence that the permit will lead to protests, Respect Life fails to establish, as it must to prevail, that the City prejudicially abused its discretion by making an implied determination that there are no unusual circumstances justifying further CEQA review. Accordingly, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This case arose when the owner of an office building in downtown South San Francisco applied for a conditional-use permit to allow the building to be used as a medical clinic. The only proposed physical changes to the building are interior alterations, minor exterior repairs, and a new sign. The anticipated tenant of the clinic is Planned Parenthood. Planned Parenthood intends to provide an array of medical services, one of which under "consideration" is medical abortions.

The City's Planning Commission approved the application after holding a public hearing and determining that the project fell within several categorical exemptions to CEQA.[2] Respect Life appealed the Planning Commission's decision to the City Council. Among other claims, they maintained that the City could not "ignore the inherently noxious and controversial nature of a portion of Planned Parenthood's services" because ensuing protests will cause "environmental impacts . . ., including traffic, parking, [and] public health and safety concerns[, that] are simply different and far more extensive . . . than the historic use of the subject property, and should properly be analyzed through a full Environmental Impact Report . . . under [CEQA]."

The City Council held a hearing on the appeal, during which it heard testimony and considered evidence from both opponents and supporters of the planned clinic. At the hearing's conclusion, the City Council voted to reject the appeal after determining that the permit was exempt from CEQA under three categorical exemptions. These

---

[2] Earlier, the City's Parking Place Commission approved a parking exception, which recognized that off-site parking was available for increased parking demand. No appeal was taken of the Parking Place Commission's decision.

2

exemptions apply to: (1) the operation of existing facilities (Guidelines[3] section 15301); (2) the conversion of small structures (Guidelines section 15303); and (3) the development of urban in-fill (Guidelines section 15332).

Respect Life and three individuals petitioned for a writ of mandate in the trial court to challenge the City Council's determination. The court held a hearing, issued a final statement rejecting the petitioners' claims, and entered final judgment.

II.

DISCUSSION

On appeal, Respect Life accepts that the project falls within at least one of CEQA's categorical exemptions, but it contends that a full environmental review is nonetheless required because the unusual-circumstances exception to those exemptions applies. We conclude that Respect Life has failed to show that the City prejudicially abused its discretion by making an implied determination that the exception was inapplicable. We reach this conclusion because Respect Life has not identified substantial evidence in the record to support a fair argument of a reasonable possibility that the project will have a significant effect on the environment due to unusual circumstances.

A.       *Respect Life Has Standing.*

Before proceeding to the merits, we briefly address, and reject, Planned Parenthood's contention that Respect Life lacks standing.[4]

For a party to have standing to petition for a writ of mandate, the party must have a beneficial interest in the litigation. (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165; Code Civ. Proc., §§ 369.5, 1086.)

---

[3] "Guidelines" refers to the Guidelines for Implementation of CEQA, which are found in California Code of Regulations, title 14, section 15000 et sequitur. All subsequent citations to the Guidelines are to title 14 of the Code of Regulations.

[4] Planned Parenthood also asserts that the individual petitioners are not parties to this appeal, a claim we need not resolve in light of our conclusion that Respect Life has standing.

3

Unincorporated associations have standing when they have such an interest. (See, e.g., *McKeon v. Hastings College* (1986) 185 Cal.App.3d 877, 892-893 ["The participation of incorporated and unincorporated associations . . . has become common and accepted in public interest-oriented litigation"]; *Simons v. City of Los Angeles* (1979) 100 Cal.App.3d 496, 501 [members of unincorporated association alleged to be property owners residing on edge of affected property had interest in proper enforcement of land-use ordinances affecting quality of their neighborhood].)

Contrary to the insinuation in Planned Parenthood's briefing, Respect Life did more than simply allege that "it was an 'unincorporated association' of individuals who live in San Mateo County." In fact, the verified petition alleged that "[p]etitioners have a geographic nexus to the proposed Project" and "are comprised of individual members, including [the individual petitioners,] . . . [who] reside in [the] vicinity of the Project and are affected by the proposed Project's environmental impacts." It further alleged that "[p]etitioners [are] organized for the purpose of protecting the interests of the residents of the region from the environmental impacts of the proposed Project and the failure to assess . . . and mitigate environmental impacts." Nothing in the record refutes these allegations, and we are therefore satisfied that Respect Life has sufficiently established its standing.

B.     *The Initial Determination of CEQA's Applicability.*

"CEQA was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.)

To ensure that environmental considerations inform public entities' decisions, CEQA establishes a multi-tiered process. Here, we are concerned with the initial step of the process, which requires the entity to " 'conduct a preliminary review in order to

4

determine whether CEQA applies to a proposed activity.' " (*Parker Shattuck Neighbors v. Berkeley City Council* (2013) 222 Cal.App.4th 768, 776.)  As part of this review, the entity determines whether the activity is a "project" for purposes of CEQA and, if it is, whether it falls under an exemption.  (*Sunset Sky Ranch Pilots Assn. v. County of Sacramento* (2009) 47 Cal.4th 902, 907.)  There are two types of exemptions: statutory, which are enacted by the Legislature and are not subject to exceptions, and categorical, which are adopted in the Guidelines and are subject to exceptions.  (*North Coast Rivers Alliance v. Westlands Water Dist.* (2014) 227 Cal.App.4th 832, 850-851.) "If the project is in an exempt category for which there is no exception, ' "no further environmental review is necessary." ' " (*Parker Shattuck*, at p. 776.)  If the project is not exempt, the entity proceeds to the other tiers of the CEQA process, which involve the preparation of an initial study and, if appropriate, an environmental impact report (EIR). (*Ibid.*)

The Guidelines describe 33 classes of "categorically exempt" projects. (Guidelines, §§ 15300-15333.)  A project that falls within one or more of the classes of exempt projects is deemed to be exempt from CEQA unless an exception set forth in Guidelines section 15300.2 applies.  (Guidelines, § 15061, subd. (b)(2).)  One of these exceptions, the "unusual-circumstances exception," provides that "[a] categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Guidelines, § 15300.2, subd. (c).)  The resolution of this case largely turns on whether Respect Life satisfied its burden of establishing that the exception applies.

  C.  *The Standards of Review and Their Effect on Our Analysis.*

Our review is de novo in the sense that "our review of the administrative record for error is the same as the trial court's; we review the agency's action, not the trial court's decision." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 381; *Parker Shattuck Neighbors v. Berkeley City Council, supra*, 222 Cal.App.4th at p. 777.)

5

The standard of review that applies to a public entity's decision under CEQA depends on the nature of the decision and when in the multi-tiered process it was made. Here, the City's decision in the initial step of the multi-tiered process that the approval of the conditional-use permit was exempt from CEQA necessarily included an implied determination that the unusual-circumstances exception was inapplicable. The standards governing an *entity's* determination of the applicability of the unusual-circumstances exception differ from the standards governing a *court's* review of that determination, but both sets of standards are critical here. These different standards were explained and settled by our state Supreme Court in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086 (*Berkeley Hillside*), and we discuss them separately.

        1.     The governing standards under *Berkeley Hillside*.

We start with the standards that governed the City. *Berkeley Hillside* explained that a party seeking to establish that the unusual-circumstances exception applies has the burden to show two elements. These elements are (1) "that the project has some feature that distinguishes it from others in the exempt class, such as its size or location" and (2) that there is "a reasonable possibility of a significant effect [on the environment] due to that unusual circumstance."[5] (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1105.) "This bifurcated approach . . . require[s] findings of *both* unusual circumstances *and* a potentially significant effect." (*Id*. at p. 1115.) "Evidence that a project *may* have a significant effect is not alone enough to remove it" from an exempt class. (*Ibid*.)

Turning to the standards that govern our review of the City's determination, *Berkeley Hillside* explained that when an entity determines whether the unusual-circumstances exception applies, a court must assess the determination under the abuse of discretion standard set forth in section 21168.5. (*Berkeley Hillside, supra*, 60 Cal.4th at

---

[5] A party may also demonstrate that the unusual-circumstances exception applies by showing "that the project *will* have a significant environmental effect," but this method is not at issue here. (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1105, italics added.)

6

p. 1114.)  This section provides that an "[a]buse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (*Id.* at p. 1110; see also § 21168.5.)  The Supreme Court clarified that "both prongs of section 21168.5's abuse of discretion standard apply on review of the agency's decision. . . .  The determination as to whether there are 'unusual circumstances' . . . is reviewed under section 21168.5's substantial evidence prong.  However, an agency's finding as to whether unusual circumstances give rise to 'a reasonable possibility that the activity will have a significant effect on the environment' . . . is reviewed to determine whether the agency, in applying the fair argument standard, 'proceeded in [the] manner required by law.' " (*Berkeley Hillside*, at p. 1114.)

Elaborating on these standards, the Supreme Court explained that whether a project presents unusual circumstances—the first element needed to establish the applicability of the unusual-circumstances exception—"is an essentially factual inquiry," and a court applies "the traditional substantial evidence standard." (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1114.)  "Under that relatively deferential standard of review, . . . reviewing courts, after resolving all evidentiary conflicts in the agency's favor and indulging in all legitimate and reasonable inferences to uphold the agency's finding, must affirm that finding if there is any substantial evidence, contradicted or uncontradicted, to support it." (*Ibid.*)

The Supreme Court also explained that in reviewing whether there is a reasonable possibility that the activity will have a significant effect on the environment—the second element needed to establish the applicability of the unusual-circumstances exception— "the reviewing court's function 'is to determine whether substantial evidence support[s] the agency's conclusion as to whether' " there is a fair argument of a reasonable possibility that the activity will have a significant effect on the environment. (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1115.)  If there is substantial evidence of such a reasonable possibility, then the public entity's determination that no fair argument can be made constitutes an abuse of discretion and cannot be upheld. (*Id.* at pp. 1112, 1115.)

7

Thus, the standards of review governing a court's consideration of the two elements needed to establish the unusual-circumstances exception differ significantly: the standard governing whether there are unusual circumstances is deferential to the entity's determination, but the standard governing whether there is a reasonable possibility that the activity will have a significant effect on the environment is not.

To sum up, when a party seeks to establish that the unusual-circumstances exception applies, it must prove to the entity that two elements are satisfied: (1) the project presents unusual circumstances and (2) there is a reasonable possibility of a significant environmental effect due to those circumstances. A court then assesses the entity's determinations on these elements by applying different standards of review: a deferential standard applies in reviewing the first element and a non-deferential standard applies in reviewing the second.

2. The application of *Berkeley Hillside*'s standards of review when the entity makes an *implied* determination that the unusual-circumstances exception is inapplicable.

We must pay particular attention in applying our standards of review in this case because, as we have mentioned, the City's determination that the unusual-circumstances exception was inapplicable must be implied. (See *San Francisco Beautiful v. City and County of San Francisco* (2014) 226 Cal.App.4th 1012, 1022-1023 [entity's determination that project falls within one of CEQA's categorical exemptions includes an implied finding that exceptions to those exemptions are inapplicable].) The City made no explicit findings on either of the two elements. Thus, while we know that the City found against Respect Life on at least one of the elements, we cannot say with certainty whether it found against Respect Life on the first element, the second element, or both.

When an entity's determination that the unusual-circumstances exception is inapplicable is implied, a court's ability to affirm is constrained. The court may affirm on the basis of the first element—which, again, asks whether the project presents any unusual circumstances—only if the court assumes that the entity found that there *were* unusual circumstances and then concludes that the record does not contain substantial

8

evidence of any such circumstances. A court cannot, however, affirm on the basis of the first element by simply concluding that the record contains substantial evidence that there are *not* unusual circumstances. This is because such an approach fails to address the possibility that the entity thought there were unusual circumstances but concluded, under the second element, that these circumstances did not support a fair argument of a reasonable possibility of a significant environmental effect.

In contrast, a court need not make any assumption about what the entity found to affirm on the basis of the second element—which, again, asks whether there is a reasonable possibility of a significant environmental effect due to any unusual circumstances. This element presupposes the existence of unusual circumstances, and a court applies a non-deferential standard of review in considering it. Under this non-deferential standard, a court must affirm an entity's implied determination that the unusual-circumstances exception does not apply if it concludes that no substantial evidence in the record supports a fair argument that there is a reasonable possibility the project will have a significant effect on the environment as a result of any purported unusual circumstances the petitioner identifies.

In short, a court cannot affirm an entity's implied determination that the unusual-circumstances exception is inapplicable by simply concluding that the record contains substantial evidence that the project involves no unusual circumstances. Instead, to affirm such an implied determination, the court must assume that the entity found that the project involved unusual circumstances and then conclude that the record contains no substantial evidence to support either (1) a finding that any unusual circumstances exist (for purposes of the first element) or (2) a fair argument of a reasonable possibility that any purported unusual circumstances identified by the petitioner will have a significant effect on the environment (for purposes of the second element).

Here, we need not address the first element because even if we assume that the record contains substantial evidence of unusual circumstances, Respect Life has failed to identify any substantial evidence of a potential significant environmental effect that could satisfy the second element.

9

D.    *Respect Life Fails to Identify Substantial Evidence Supporting a Fair Argument that There Is a Reasonable Possibility the Project Will Have a Significant Effect on the Environment.*

" 'Significant effect on the environment' means a substantial, or potentially substantial, adverse change in the environment." (§ 21068.) The change must be to "any of the physical conditions within the area affected by the project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance. An economic or social change by itself shall not be considered a significant effect on the environment," although it "may be considered in determining whether the physical change is significant." (Guidelines, § 15382.)

Respect Life argues that the conditional-use permit will result in protests based on "the notoriety of [Planned Parenthood] and its activities," which will in turn cause significant environmental impacts "not associated with the normally benign medical office."[6] These impacts, according to Respect Life, include "sidewalk obstruction, public safety, traffic congestion, parking congestion[,] business disruption," and an increase in noise levels.

The City and Planned Parenthood argue that these claimed impacts are not the kind of foreseeable "[i]ndirect or secondary effects" governed by CEQA because, even if they come to pass, they will be caused by the protests, not the project as required by the Guidelines. (Guidelines, § 15358, subd. (a)(2); see also *id.*, § 15064, subd. (d)(1), (2).) But even assuming for the sake of argument that these impacts are the kinds of foreseeable indirect or secondary effects that could implicate CEQA, we must affirm the City's implied determination because there was no substantial evidence presented to support a fair argument that there is a reasonable possibility that such impacts will have a significant environmental effect.

---

[6] In arguing that it is in part Planned Parenthood's notoriety that will lead to indirect environmental impacts, Respect Life argues contrary to its concession elsewhere in its briefing that "CEQA analysis does not consider the identity of the Applicant, business proprietor or patron."

The evidence presented about the possible indirect or secondary effects of protests was minimal, vague, and speculative. True enough, some opponents of the project indicated that they would protest. But no evidence was presented to indicate that the total number of protesters would be large or that the protests would be particularly disruptive. And no evidence was presented that any resulting increase in traffic, sidewalk use, noise, or disruptions to businesses would be consequential. To satisfy its burden of identifying substantial evidence to support a fair argument that there was a reasonable possibility of a significant effect on the environment, Respect Life is required to do more than simply assert that protests will lead to environmental impacts. We decline to hold, as Respect Life would apparently have us do, that the possibility of "foreseeable First Amendment activity" establishes the applicability of the unusual-circumstances exception because the activity might lead to unsubstantiated and ill-defined indirect or secondary environmental effects.

Furthermore, not only does the record reflect the *absence* of evidence establishing indirect or secondary environmental effects, it also reflects the *presence* of evidence supporting a determination that there is no reasonable possibility of a significant effect on the environment. To begin with, evidence was presented that protests were likely to be small and manageable. An attorney for Planned Parenthood stated that at Planned Parenthood's "San Mateo health center, we typically have 1 to 5 protesters at a time." Another witness, who testified before the Parking Place Commission, commented that at Kaiser and Mills-Peninsula hospitals "surgical abortions are performed all the time. I don't see anybody protesting those facilities." And a witness who lives near a Planned Parenthood clinic in San Jose remarked that the clinic has "proven to be nothing but a benefit to the neighborhood." Addressing the presence of protesters, this witness testified, "[W]e have just learned passing by them every day of the week that they are just a fixture of the community. It is their right to protest and we respect that. We just tend to ignore them."

Parking issues were thoroughly considered by the Parking Place Commission, and its approval of a parking exception was not appealed. The City and Planned Parenthood

11

argue, and we agree, that Respect Life forfeited any parking-related concerns by not appealing from this approval. But even if Respect Life had adequately preserved the issue, evidence was presented that the slight increase in required parking, projected to be 13 spaces, would be readily accommodated by the existing stock of available spaces. Finally, as to public safety impacts, a police sergeant testified, "I did some research on other facilities throughout the Bay Area, and yeah, there are increased calls for service, primarily to deal with local ordinances, whether it be signs, noise ordinance, and things of that nature. There is an occasional assault or vandalism, [but] out of nine facilities that I checked with, the majority of it was maybe two calls a week to deal with peaceful protesting, things of that nature." In response to a follow-up question, the sergeant stated that the police were equipped to handle issues arising from protests and that Planned Parenthood's security plan and applicable police requirements were "consistent with today's security standards."

Respect Life argues that the City Council received incorrect legal advice when it was told that a CEQA analysis "cannot consider impacts that may result from reactions to proposed use." At oral argument, Respect Life reiterated its contention that this advice was wrong, and it argued that the case must be remanded to the City for it to reconsider whether to issue the conditional-use permit under the correct standard. The argument is not persuasive. Regardless of whether the City was given accurate legal advice, an issue we need not and do not resolve, Respect Life can prevail here only if it can demonstrate that there is substantial evidence in the record to create a fair argument of a reasonable possibility that a significant effect on the environment will occur. It has failed to do so. And contrary to Respect Life's argument otherwise, nothing in the record indicates that the City precluded Respect Life or any other party from presenting evidence. If anything, the record reflects the City's impressive willingness to permit full, unbridled comment, mostly by opponents of abortion.

The record fails to reveal any substantial evidence supporting a fair argument that there is a reasonable possibility that impacts arising from protests will have a significant effect on the environment. (*Berkeley Hillside, supra*, 60 Cal.4th at pp. 1112, 1115.)

12

Accordingly, we cannot conclude that the City's approval of the conditional-use permit constituted a prejudicial abuse of discretion.

## III.
### DISPOSITION

The judgment of the trial court is affirmed. Respondents are entitled to recover their costs on appeal.

13

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Dondero, J.

*Respect Life South San Francisco v. City of South San Francisco* (A145992)

14

Trial Court:

     San Mateo County Superior Court


Trial Judge:

     Hon. Marie S. Weiner


Counsel for Plaintiff and Appellant:

     Gregory N. Weiler

Counsel for Defendant and Respondent and Real Party in Interest:

     Julie Jones, Perkins Coie LLP

     Stephen L. Kostka, Perkins Coie LLP

     Christopher A. Chou, Perkins Coie LLP

*Respect Life South San Francisco v. City of South San Francisco* (A145992)