Filed 2/16/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ARCADIANS FOR ENVIRONMENTAL PRESERVATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF ARCADIA et al.,<br><br>Defendants and Respondents;<br><br>JULIE WU et al.,<br><br>Real Parties in Interest. | B320586<br><br>(Los Angeles County Super. Ct. No. 20STCP02902) |

     APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

     Leibold McClendon & Mann and John G. McClendon for Plaintiff and Appellant.

     Best Best & Krieger, Alisha M. Winterswyk and Amanda Daams for Defendants and Respondents City of Arcadia and City Council of the City of Arcadia.

     No appearance for Real Parties in Interest Julie Wu and Wallace Y. Fu Architect, Corp.

After the Arcadia City Council approved Julie Wu's application to expand the first story of her single-family home and add a second story ("the project"), Arcadians for Environmental Preservation (AEP), a grassroots organization led by Wu's next-door neighbor, filed a petition for writ of administrative mandamus challenging the City's decision. AEP's petition primarily alleged the city council had erred in finding the project categorically exempt from the requirements of the California Environmental Quality Act (Pub. Resources Code, §§ 21000 et seq.)[1] (CEQA) and CEQA's implementing guidelines.[2] The superior court denied the petition, ruling as a threshold matter that AEP had failed to exhaust its administrative remedies. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Wu's Application to the Architectural Review Board for Approval of First- and Second-story Additions to Her Single-family Home*

In June 2018 Wu submitted an application to the Arcadia Highlands Homeowners' Association for approval to expand the first story of her 1,960-square-foot single-family ranch-style home and add a second story. After holding several public hearings on

---

[1] Statutory references are to this code unless otherwise stated.

[2] We use the terms "implementing guidelines" or "CEQA Guidelines" to refer to the regulations for the implementation of CEQA authorized by the Legislature (Pub. Resources Code, § 21083) and codified in title 14, section 15000 et seq. of the California Code of Regulations (14 Cal. Code Regs., § 15000 et seq.).

the project, the architectural review board assigned to Wu's homeowners' association[3] denied approval for the project, citing the project's mass and height as well as concerns over compatibility with the design of existing homes.

In 2019 Wu submitted a second application to the architectural review board to address the concerns the board had raised with her initial application. As revised, Wu's project proposal added 260 square feet to the first story, a 1,140 square-foot second story, a new 50-square-foot covered front porch and 170 square feet to the existing rear porch. Wu also changed the design from the prior iteration of the project proposal—a French Country style—to a ranch home to better fit with the design of the existing neighborhood.

In response to Wu's revised application, the architectural review board requested Wu install story poles to visually represent the addition so that it could better visualize the scope of the project. Wu provided a computer-generated simulated view of the proposed project instead, insisting that story poles would not provide an accurate representation of the mass of the building and was an unnecessary and costly undertaking. After holding a hearing at which community members spoke in favor and against the proposed project, the architectural review board denied approval for the project as inconsistent with the City's

---

[3] There are five homeowners' associations within the City. Each association has an architectural review board charged with implementing the design guidelines adopted by the City. The architectural review board considers for approval/disapproval applications for construction of any new structure and additions or other façade improvements for existing structures.

single-family design guidelines relating to massing, height and scale.

    2. *Wu's Appeal to the City's Planning Commission*

On April 13, 2020 Wu timely appealed the decision of the architectural review board to the City's planning commission pursuant to Arcadia Municipal Code section 9108.07. After conducting a detailed review, the planning commission's staff recommended the City conditionally approve the project, provided Wu make four changes that it determined would make the project compatible with the surrounding area.[4] Under the heading "Environmental Analysis," the staff report stated the project qualified as a "Class 1 Exemption for Existing Facilities from the requirements of [CEQA] under Section 15301 of the CEQA Guidelines." In a preliminary exemption assessment attached to its report, planning commission staff described the project as categorically exempt from CEQA as an "[a]ddition to an existing facility" under CEQA Guideline "section 15301(a)."

On May 26, 2020 the planning commission held a noticed hearing (using live-stream and telephonic access due to the COVID-19 emergency) to address Wu's appeal and its staff recommendations. Community members spoke in favor and against approval of the project. Those against, including Dr. Henry Huey, Wu's next-door neighbor, asserted the design infringed on neighbors' privacy, explaining occupants of Wu's

---

[4] The planning commission's staff recommended Wu reduce the pitch of the roof, lower the second-floor plate height, decrease window sizes on the second-floor front elevation to be proportional to those on the first-floor front elevation and modify the second-floor dormers to accommodate the new window size.

4

property would have a direct view into neighboring homes. Opponents of the project also argued the size and scale of the project was incompatible with the design and character of existing homes.

Following the hearing, the planning commission voted to adopt staff's recommendation and conditionally approve the project, provided Wu revise it to include the four changes staff recommended. The planning commission's ruling stated the project was exempt from CEQA under the class 1 categorical exemption for additions to existing facilities.

3. *Wu's Next-door Neighbor's Administrative Appeal of the Planning Commission's Approval*

On June 8, 2020 Dr. Huey appealed the planning commission's approval of the project to the city council in accordance with the administrative appeal process authorized in the City's municipal code. Dr. Huey argued the project's design, if implemented, would infringe on the privacy of neighbors. In addition, he argued the project's size, scale and certain design features were incompatible with the existing character of the neighborhood.

On July 22, 2020 the City issued notice of a public hearing on Dr. Huey's appeal to be held using remote access (live-stream and telephonic due to the COVID-19 emergency) on August 4, 2020. The notice stated the city council would consider at the hearing an appeal from the planning commission's conditional approval of the project. As to CEQA, the notice stated the hearing would consider "Categorical Exemption per Section 15301 from the California Environmental Quality Act (CEQA) for an addition to an existing structure." The notice stated, "Persons wishing to comment on the project and/or

5

environmental documents may do so at the public hearing or by submitting written statements to the City Clerk prior to the August 4, 2020 hearing."

The August 4, 2020 meeting agenda stated the city council would consider "Resolution No. 7329 upholding the Planning Commission's approval" of Wu's project with "a categorical exemption under the California Environmental Quality Act ('CEQA') to construct a first and second story addition to an existing one story residence" on Wu's property. Section 6 of Resolution No. 7329, which the city council adopted on a vote of four to one at the end of public comment portion of the hearing, stated, "[T]he City Council determines that the Project is Categorically Exempt per Class 1, Section 15301(a) of [CEQA] Guidelines, and upholds the Planning Commission's approval" of the project "subject to" attached conditions.

4. *AEP's Petition for Writ of Administrative Mandamus*

Following the city council's decision, Dr. Huey formed AEP, described in the complaint in the case at bar as "a grassroots unincorporated association composed of and supported by community members and others devoted to the preservation of the environment."

On September 9, 2020 AEP petitioned for a writ of administrative mandamus, primarily alleging the City's approval of the project did not comply with CEQA and the city council had erred in concluding the project was categorically exempt from CEQA's requirements. AEP asserted it had exhausted its administrative remedies. AEP's petition also alleged the City's approval of the project violated specific requirements of the California Planning and Zoning Law (Gov. Code, § 65000 et seq.)

by ignoring the City's general plan policies and residential design guidelines.

On September 25, 2020, while this petition was pending, the City posted in accordance with CEQA requirements a notice of CEQA exemption, filed with the Los Angeles County Clerk and duly recorded, stating, "The proposed project qualifies as a Class 1 Exemption for existing facilities under Section 15301 of the CEQA Guidelines as it involves an addition that will not result in an increase of more than 10,000 square feet and the project is in an area where all public services and facilities are available to allow for maximum development permissible in the General Plan and the project site is not located in an environmentally sensitive area." As worded, the notice of exemption refers to subdivision (e) of section 15301 of the CEQA Guidelines.

On February 2, 2022, following a hearing, the superior court denied the petition, ruling AEP had failed to raise at the administrative level the issue of the City's categorical-exemption finding pursuant to section 15301 of the CEQA administrative guidelines and thus had not exhausted its administrative remedies. The court also rejected AEP's argument that the City had "failed to proceed in a manner required by law" because it had made its exemption determination without considering whether an exception to the exemption existed. Finally, the court ruled the City's decision did not violate the specific requirements of the California Planning and Zoning law.[5]

---

[5]  AEP has abandoned on appeal its arguments relating to the California Planning and Zoning Law.

AEP filed a timely notice of appeal from the court's judgment.

## DISCUSSION

### 1. *Standard of Review*

On appeal from denial of a petition for writ of administrative mandamus, we review the agency's decision, not the superior court's, to determine whether the agency has prejudicially abused its discretion. (*Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 214-215.) An abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination is not supported by substantial evidence. (§ 21168.5; see *Center for Biological Diversity,* at p. 215.) We exercise our independent judgment to determine whether the agency employed proper procedures and review the agency's factual findings for substantial evidence. (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 512; *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 675 (*Save Agoura*).)

### 2. *Overview of CEQA*

CEQA and its implementing regulations "embody California's strong public policy of protecting the environment." (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285 (*Tomlinson*).) "CEQA was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval

8

of a project that may significantly impact the environment." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382; accord, *Save Agoura, supra,* 46 Cal.App.5th at p. 673.)

"CEQA review is undertaken by a lead agency, defined as 'the *public agency* which has the principal responsibility for *carrying out* or approving a project which may have a significant effect upon the environment.'" (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 712.) The lead agency's implementation of CEQA "proceeds by way of a multistep decision tree, which has been characterized as having three tiers." (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1185 (*Union of Medical Marijuana*).) First, the agency determines whether the proposed activity is subject to CEQA at all. "In practice," this requires the agency to determine whether the proposed activity constitutes a "project" as defined in the statutory scheme and CEQA's Guidelines. (*Id.* at pp. 1185-1186.) If not, the lead agency may proceed without further regard to CEQA. (*Ibid.;* accord, *Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380-381.)

Second, assuming the activity is a project, the agency must decide whether the activity qualifies for a statutory exemption (see § 21080, subd. (b)(1)) or one of the 33 categorical exemptions articulated in CEQA's implementing guidelines. (See 14 Cal. Code Regs., §§ 15300 ["[s]ection 21084 of the Public Resources Code requires these guidelines to include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall, therefore, be exempt from the provisions of CEQA"], 15301-15333 [listing 33 classes of

9

projects as categorically exempt from CEQA]; see also *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1104 (*Berkeley Hillside*) [the categorical exemptions in the CEQA Guidelines reflect and further the legislative intent that certain classes of projects have been categorically determined to not have a significant effect on the environment and thus are exempt from CEQA].)  If an exemption applies, the project is excused from environmental review.  (*Union of Medical Marijuana, supra,* 7 Cal.5th at p. 1186; *McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 74.)

If the lead agency determines the proposed activity is a project subject to CEQA and not categorically exempt from CEQA's requirements, CEQA requires the agency to undertake an initial study to determine whether the project "may have a significant effect on the environment."  (14 Cal. Code Regs., § 15063, subd. (a); see *Friends of College of San Mateo Gardens v. San Mateo County Community College Dist*. (2016) 1 Cal.5th 937, 945.)  "If the initial study finds no substantial evidence that the project may have a significant environmental effect, the lead agency must prepare a negative declaration, and environmental review ends.  [Citations.]  If the initial study identifies potentially significant environmental effects but (1) those effects can be fully mitigated by changes in the project and (2) the project applicant agrees to incorporate those changes, the agency must prepare a *mitigated* negative declaration.  This too ends CEQA review." (*Union of Medical Marijuana, supra,* 7 Cal.5th at p. 1186.) However, if the initial study finds substantial evidence that the project may have a significant environmental impact and a mitigated negative declaration is inappropriate, the lead agency must prepare and certify an environmental impact report before

approving or proceeding with the project. (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 488.)

  3. *AEP Failed To Exhaust Its Administrative Remedies on the Question Whether the Project Fell Within the Scope of the Class 1 Exemption*

    a. *Governing law*

Exhaustion of administrative remedies is a jurisdictional prerequisite to maintaining an action alleging a lead agency's noncompliance with CEQA. (§ 21177;[6] *Save the Hill Group v. City of Livermore* (2022) 76 Cal.App.5th 1092, 1104-1105 (*Save the Hill*); *City of Long Beach v. City of Los Angeles* (2018) 19 Cal.App.5th 465, 474; *Stop Syar Expansion v. County of Napa* (2021) 63 Cal.App.5th 444, 453 (*Stop Syar*). A challenge to an agency's findings that a project is categorically exempt from CEQA under the CEQA Guidelines is subject to the exhaustion requirement. (*Tomlinson, supra,* 54 Cal.4th at p. 291; accord, *McCann v. City of San Diego, supra,* 70 Cal.App.5th at p. 82.)

The purpose of CEQA's exhaustion doctrine is to afford the public agency the opportunity to hear and respond to articulated factual issues and legal theories before its actions are subject to judicial review. (*Stop Syar, supra,* 63 Cal.App.5th at p. 453; *Save Agoura, supra,* 46 Cal.App.5th at p. 677.) To achieve this

---

[6] Section 21177, subdivision (a), provides, "An action or proceeding shall not be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or before the close of the public hearing on the project before the issuance of the notice of determination."

purpose "the exact issue" must be presented to the agency. (*Save the Hill, supra,* 76 Cal.App.5th at p. 1105; *North Coast Rivers Alliance v. Marin Municipal Water Dist. Bd. of Directors* (2013) 216 Cal.App.4th 614, 623.) Although the level of precision that governs an attorney's objections in the trial court is not required (see *Stop Syar,* at p. 453, fn. 3; *Save Agoura,* at p. 677), the challenge raised in the administrative proceeding must be sufficiently specific to "fairly apprise the agency of the substance of the objection so that it has an opportunity to evaluate and respond to it." (*Stop Syar,* at p. 453; accord, *Save the Hill,* at p. 1104.) "[B]land and general references to environmental matters . . ., or isolated and unelaborated comment[s] do not satisfy the exhaustion requirement." (*Stop Syar,* at p. 453, [cleaned up]; *North Coast Rivers Alliance,* at p. 623.) Nor do "general objections to project approval." (*Save Agoura,* at p. 677 [cleaned up]; *City of Long Beach v. City of Los Angeles, supra,* 19 Cal.App.5th at pp. 474-475.)

The petitioner bears the burden of demonstrating the issues raised in the petition were presented at the administrative level. (*Save Agoura, supra,* 46 Cal.App.5th at p. 677; *City of Long Beach v. City of Los Angeles, supra*, 19 Cal.App.5th at p. 475.) The question of exhaustion is a legal issue subject to de novo review. (*Save Agoura,* at p. 677; accord, *Stop Syar*, *supra,* 63 Cal.App.5th at p. 453.)

> b. *AEP's general objections to project approval did not satisfy the exhaustion requirement*

AEP alleges the City erred in concluding the project fell within the class 1 categorical exemption for the "minor alteration of existing public or private structures." (14 Cal. Code Regs., § 15301.) According to AEP, because Wu's addition would

increase the floor space of her home by more than 50 percent and involved a major expansion of an existing use in an environmentally sensitive area, it fell outside the scope of Guideline section 15301, subdivision (e)(2).[7]

No member of AEP objected on this ground at the administrative proceeding. (See § 21177, subds. (a) [requiring objector to present grounds for noncompliance to agency as a prerequisite for maintaining action for noncompliance with CEQA], (c) [if petitioner is organization formed after the project's approval, exhaustion is satisfied if a member of organization complied with exhaustion requirement]; *Stop Syar, supra,* 63 Cal.App.5th at p. 457 [to demonstrate that it exhausted its administrative remedies, petitioner must show that its

---

[7]     CEQA Guideline section 15301 provides in part, "Class 1 consists of . . . minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1. The key consideration is whether the project involves negligible or no expansion of use. [¶] Examples include but are not limited to: [¶] (a) Interior or exterior alterations involving such things as interior partitions, plumbing, and electrical conveyances; [¶] . . . [¶] (e) Additions to existing structures provided that the addition will not result in an increase of more than: [¶] (1) 50 percent of the floor area of the structures before the addition, or 2,500 square feet, whichever is less; or [¶] (2) 10,000 square feet if: [¶] (A) The project is in an area where all public services and facilities are available to allow for maximum development permissible in the General Plan and [¶] (B) The area in which the project is located is not environmentally sensitive."

13

administrative appeal "specifically identified the grounds it raises in this court action"].)

Recognizing this failure to assert an explicit objection, AEP highlights statements in Dr. Huey's written administrative appeal, asserting they were sufficient to fairly apprise the City of his objection to the City's application of the exemption. Dr. Huey wrote, "The staff report neglects to consider the environmental impact of expanding the additional first floor living space, altering the backyard landscape, reshaping the pool, handling/removing hazardous waste, in the absence of soil studies to determine the effect of adding a second story, excavation, altering the topography in a hillside terrain, and the potential adverse effect on neighbors' health and living environment. [¶] . . . [¶] The environmental impact of the two story addition should also be considered within the context of the ensuing two story projects to develop along this street of single story, Ranch style homes . . . . The cascade of ensuing building developments throughout the neighborhood creates a cumulative environmental impact that is harmful and which must be anticipated and which should be analyzed, so that steps can be taken beforehand to mitigate damage. [¶] . . .[¶] Cumulative impact analysis is important because history has shown that environmental damage often occurs from the accumulation of a variety of relatively smaller projects over time. The City has not addressed the impacts on the neighborhood character, natural resources, increased runoff, effects on water quality, fire risk, energy consumption, traffic and noise pollution, among various other vital considerations mandated by CEQA."

Contrary to AEP's contention, none of these general references to potential environmental impacts satisfied the

14

exhaustion requirement. As discussed, any project that comes within a class 1 categorical exemption has been inherently determined by the Secretary of Natural Resources Agency not to have significant environmental impacts. (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1104.) To preserve AEP's challenge to that exemption, therefore, it was incumbent on Dr. Huey (or some other AEP member) to at least articulate (albeit certainly not establish) why application of that exemption might be incorrect. None of Dr. Huey's general statements, even when considered together, came close to apprising the City of Dr. Huey's current contention the project fell outside the scope of the class 1 categorical exemption.

AEP asserts Dr. Huey's request for an environmental impact report did just that.[8] According to AEP, because the three-step CEQA decision tree requires some form of an environmental impact report or analysis (step three) only when the City has found that CEQA applies (step one) and the project is not otherwise exempt (step two), by requesting an environmental impact report, Dr. Huey necessarily objected to the City's categorical exemption finding. As AEP articulates it in its opening brief, "[I]f the coach of a Little League team tells his next batter that she must run to second or third base if she gets a hit, the batter knows that her coach is *implicitly* telling her that

---

[8]     Dr. Huey concluded his written appeal by stating, "Finally, I request soil studies and environmental quality impact analysis to address various vital considerations mandated by CEQA. These are essential elements to consider in preserving the quality and attractive character of this unique neighborhood for the enjoyment of the community and future generations."

15

it won't be enough for her to simply run to first base and stay there."

AEP's argument fundamentally misapprehends the purpose of the exhaustion requirement. To be sure, requesting an environmental review suggests the individual opposing approval of an activity may believe it qualifies as a project within the meaning of CEQA and no exemption applies, but it fails to provide any form of notice to the public agency as to the substance of the challenge to a tentative decision not to undertake an environmental review. Here, the request was certainly not tantamount to an assertion the class 1 exemption did not apply to Wu's planned addition to her home, let alone a challenge that explained why the requirements for that exemption might not be satisfied. Such a general, implied objection is contrary to the mandate of section 21177, subdivision (a), that the specific grounds be asserted. (See *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 535, 537 [petitioner's requests for the lead agency to provide "'a detailed chronology of the environmental evaluation'" of the proposed developments and "identify any potential adverse air quality impacts" constituted the type of "'isolated and unelaborated comment[s] by . . . member[s] of the public' that courts have held fail to 'fairly rais[e]'" the objection that the City had not complied with CEQA]; see generally *Stop Syar, supra,* 63 Cal.App.5th at pp. 453-454 [the purpose of exhaustion—enabling the agency to respond before litigation is initiated—would be undermined by anything less than requiring the exact issue be raised; otherwise litigants would be able "'to narrow, obscure, or even omit their arguments before the final administrative authority because they

16

could possibly obtain a more favorable decision from a trial court'"].)

We have found no case, and AEP cites none, where the request for an environmental impact report, without more, was held to be sufficient to preserve a challenge to the application of a particular CEQA exemption. While Dr. Huey was not required to cite a particular statute or CEQA Guideline (see *Save Agoura, supra,* 46 Cal.App.5th at p. 685; *McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1264), something more than articulating general environmental concerns was required to preserve his objection to the application of the class 1 categorical exemption.

*Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745 (*SORE*), on which AEP largely relies, does not assist AEP. There, an association of property owners challenged the adequacy of an environmental impact report relating to a five-story residential care facility for senior citizens in the City of West Hollywood. (*Id.* at p. 1748.) At issue was "whether the EIR [environmental impact report] for the Project was required to examine alternative sites outside the territorial limits of the City, since the EIR found no feasible alternative sites within the City." (*Ibid.*) The City contended SORE had not exhausted its administrative remedies on that issue because "SORE did not specifically object to the legal adequacy of the EIR's alternative site analysis." (*Id.* at p. 1750.) The appellate court rejected that argument, concluding "that SORE's objections to the Project, while not identifying the precise legal inadequacy upon which the trial court's ruling ultimately rested, fairly apprised the City and Rossmoor [the developer] that SORE believed the environmental impacts of developing the

17

Project on the Rossmoor site would be deleterious to the surrounding community." (*Ibid.*)

As the court observed in *California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603 when rejecting *SORE* as helpful precedent on the question whether the petitioner had exhausted its remedies, "Given that the appellate court in *SORE* failed to identify what SORE's actual 'objections to the Project' were, the *SORE* case is of little assistance here, as we cannot determine exactly what comments the court found were sufficient to exhaust administrative remedies on the adequacy of the EIR's alternative site analysis and thus cannot extrapolate from the facts of that case a legal principle we can apply to the facts of this case. Without that detail, *SORE* at best stands for the proposition that complaints a project will be deleterious to the surrounding community may be sufficient to exhaust administrative remedies on the EIR's failure to adequately examine alternative sites." (*Id.* at p. 618.) For the same reason, we, too, find *SORE* of little value to the issue at hand.

Dr. Huey's objections the project was inconsistent with the City's design guidelines and general plan and infringed on neighbor privacy were clear, comprehensive and unequivocal. Conversely, his identification of CEQA generally and request for an environmental impact report, without more, were precisely the kind of general references that do not rise to the specific level of objection necessary for exhaustion. The City would not have known, for example, that Dr. Huey claimed the project fell outside Guideline section 15301, subdivision (e)'s exemption for projects adding less than 10,000 square feet because it was located in an environmentally sensitive area.

c. *Exhaustion was not excused*

CEQA's exhaustion requirement is excused when there is no opportunity for members of the public to object to the agency's determination or the agency fails to give the notice of hearing required by law. (See § 21177, subd. (e) ["[t]his section does not apply to any alleged grounds for noncompliance with this division for which there was no public hearing or other opportunity for members of the public to raise those objections orally or in writing before the approval of the project, or if the public agency failed to give the notice required by law"]; *Tomlinson, supra,* 54 Cal.4th at p. 291 [section 21177's exhaustion requirement applies "to a public agency's decision that a proposed project is categorically exempt from CEQA compliance as long as the public agency gives notice of the ground for its exemption determination, and that determination is preceded by public hearings at which members of the public had the opportunity to raise any concerns or objections to the proposed project"]; *Los Angeles Dept. of Water & Power v. County of Inyo* (2021) 67 Cal.App.5th 1018, 1034 ["'[w]hen an agency holds a hearing *but does not provide adequate notice that a CEQA exemption will be considered,* the requirement to exhaust remedies on the CEQA claim does not apply'"].)

Without challenging the legality of the notices of public hearing,[9] AEP asserts exhaustion should be excused because the agendas posted for the administrative hearings referred

---

[9]     AEP does not contend the City's notices of public hearing failed to comply with the requirements in CEQA or Arcadia Municipal Code section 9108.13.020 (identifying public hearing notice requirements).

19

generally to the consideration of a CEQA exemption, without identifying which of the 33 exemptions it was considering. AEP's argument lacks any merit.

The notice of public hearing for the May 2020 planning commission hearing specifically stated the commission would consider Wu's project appeal and the application of a "Categorical Exemption per Section 15301 from the California Quality Act (CEQA) for an addition to an existing structure," language unambiguously referring to Guideline section 15301, subdivision (e). The notice of public hearing for the August 4, 2020 hearing on Dr. Huey's appeal included identical language relating to the exemption. In addition, the planning commission's staff report and the city council's staff reports provided to Dr. Huey in advance of both hearings also identified the class 1 categorical exemption under Guideline section 15301. (Cf. *Los Angeles Dept. of Water & Power v. County of Inyo, supra,* 67 Cal.App.5th at p. 1035 [exhaustion excused when agency provided no notice of exemption in either its notices of public hearing or in the meeting agendas].)

There are, as AEP points out, minor inconsistencies in the City's identification of the exemption: In its notices of hearing, the City identified a class 1 categorical exemption under Guideline section 15301 for an "addition to an existing structure," language referring to subdivision (e) of that guideline. The planning commission's May 2020 staff report, including an attached notice of preliminary exemption, and the City's August 4, 2020 Resolution 7329, however, identified subdivision (a) of Guideline section 15301. While greater care should have been taken by City staff, this discrepancy was immaterial. By their terms, Guideline section 15301's

subdivisions merely provide examples of class 1 exemptions; they do not restrict the application of that exemption, which is ultimately determined by evaluating whether the project involves a "negligible or no expansion of existing or former use." (14 Cal. Code Regs., § 15301.) Significantly, no member of AEP addressed the class 1 categorical exemption at all at the administrative level under either subdivision. Nor did any AEP member argue then, as AEP does now, that the project presented a "major expansion of use," transforming a single family-home into a duplex" and thus falling outside the scope of a class 1 exemption irrespective of the examples listed in Guideline section 15301.[10] The discrepancy in subdivisions neither negated proper notice of the City's intent to apply a class 1 categorical exemption nor caused any prejudice.

    4. *AEP Has Not Demonstrated the City Failed To Proceed In a Manner Required by Law When It Impliedly Found No Exception To the Exemption Applied*

Categorical exemptions in the guidelines are subject to exceptions enumerated in Guideline section 15300.2. (14 Cal. Code Regs., § 15601, subd. (b)(2) [a project is exempt from CEQA if "[t]he project is exempt pursuant to a categorical exemption (see Article 19, commencing with Section 15300) and the application of that categorical exemption is not barred by one of the exceptions set forth in Section 15300.2"]; see *Berkeley Hillside, supra*, 60 Cal.4th at p. 1103 [a lead agency may not determine a categorical exemption applies without considering

---

[10] Although we do not reach the issue in light of our ruling on exhaustion, our review of the administrative record revealed no support for AEP's characterization of the project as a duplex.

whether it is foreclosed by an exception].)  The two exceptions that constrain a class 1 categorical exemption are (1) the cumulative impacts exception and (2) the unusual circumstances exception.  (14 Cal. Code Regs., § 15300.2, subds. (b) ["[a]ll exemptions for these classes are inapplicable when the cumulative impact of successive projects of the same type in the same place, over time is significant"], (c) ["[a] categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances"].)

AEP contends the record is devoid of any evidence the City ever considered whether *any* exception foreclosed application of the class 1 exemption and, consequently, failed to proceed in a manner required by law.  For this reason alone, AEP argues, we must reverse without reaching the merits.  (See § 21168.5 [agency abuses its discretion when it does not proceed in a manner required by law].)

The City's declaration of a class 1 categorical exemption, however, included an implied finding that no exception barred the exemption.  (See *Respect Life South San Francisco v. City of South San Francisco* (2017) 15 Cal.App.5th 449, 457 [an agency's "determination that a project falls within one of CEQA's categorical exemptions includes an implied finding that exceptions to those exemptions are inapplicable"]; *San Francisco Beautiful v. City and County of San Francisco* (2014) 226 Cal.App.4th 1012, 1022-1023 [same]; see also *Madrigal v. City of Huntington Beach* (2007) 147 Cal.App.4th 1375, 1386; *Association for Protection etc. Values v. City of Ukiah* (1991) 2 Cal.App.4th 720, 731.)

Relying on *Berkeley Hillside, supra,* 60 Cal.4th 1086, AEP insists the guidelines require the agency to make its consideration of an exception plain on the record before it may declare an exemption. But neither the guidelines themselves nor the *Berkeley Hillside* decision go that far. In *Berkeley Hillside* the Supreme Court addressed the "unusual circumstances" exception, holding that a reasonable possibility that the activity will have a significant effect on the environment is not, itself, "unusual circumstances." (*Id.* at pp. 1100-1102.) In his concurring opinion disagreeing with that interpretation of the unusual circumstances exception, Justice Liu highlighted the significant burden a project opponent faces in establishing the exception. (See *id.* at p. 1130 (conc. opn. of Liu, J. [observing that "an agency may find that a project falls within a categorical exemption without first making an express or definitive finding that no section 15300.2 exception applies; the burden is on the party challenging the categorical exemption to show that an exception applies"].) In disputing what Justice Liu described as the agency's significant procedural advantage, the *Berkeley Hillside* majority stated, "[E]ven if a proposed project faces no opposition, an agency invoking a categorical exemption may not simply ignore the unusual circumstances exception; it must 'consider the issue of significant effects . . . in determining whether the project is exempt from CEQA where there is some information or evidence in the record that the project might have a significant environmental effect.' [Citation.] This follows from Guidelines section 15061, subdivisions (a) and (b)(2), which, respectively, (1) direct a lead agency to determine whether a proposed project is 'exempt from CEQA' and (2) specify that a project is exempt if a categorical exemption applies 'and the

application of that categorical exemption is not barred by one of the exceptions set forth in Section 15300.2.' Thus, an agency may not apply a categorical exemption without considering evidence in its files of potentially significant effects, regardless of whether that evidence comes from its own investigation, the proponent's submissions, a project opponent, or some other source." (*Id.* at p. 1103.) In other words, an agency must consider whether an exemption is subject to an exception and may not ignore contrary evidence in the record in making that finding. However, the *Berkeley Hillside* Court did not hold the finding that no exception bars the exemption must be express.[11]

> 5. *AEP Has Not Demonstrated the City Erred in Concluding the Cumulative Effects Exception Did Not Apply*

In contrast to his general request for an environmental impact report, Dr. Huey did assert more specifically the project had the potential, when considered together with other projects in the area that had been approved or were seeking approval, to have "significant, cumulative harmful environmental impact" and urged the City to conduct a "cumulative impact analysis." There is some question whether these remarks, without more, were sufficient to preserve AEP's argument that the exemption was subject to the cumulative effects exception. (See e.g., *Banker's Hill, Hillcrest, Park West Community Preservation Group v. City*

---

[11] Because the lead agency in *Berkeley Hillside* had expressly found that the unusual circumstances exception did not apply, the Court had no occasion to consider the doctrine of implied findings in this context. (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 [cases are not authority for propositions not considered].)

*of San Diego* (2006) 139 Cal.App.4th 249, 282 [unelaborated remark at hearing that agency ignored "cumulative effects" was too general to preserve objection].)  However, assuming AEP satisfied the exhaustion requirement, its argument fails on its merits.

As discussed, the cumulative effects exception applies where "the cumulative impact of successive projects of the same type in the same place, over time is significant."  (14 Cal. Code Regs., § 15300.2. subd. (b).)  "'Cumulative impacts' refer to two or more individual effects which, when considered together, are considerable or which compound or increase other environmental impacts. [¶] (a) The individual effects may be changes resulting from a single project or a number of separate projects. [¶] (b) The cumulative impact from several projects is the change in the environment which results from the incremental impact of the project when added to other closely related past, present, and reasonably foreseeable probable future projects.  Cumulative impacts can result from individually minor but collectively significant projects taking place over a period of time."  (14 Cal. Code Regs., § 15355.)

AEP bore the burden to produce evidence that the cumulative effects exception barred application of the exemption. (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1105 ["[a]s to projects that meet the requirements of a categorical exemption, a party challenging the exemption has the burden of producing evidence supporting an exception"].)  AEP contends Dr. Huey did so when, in his administrative complaint, he referred to the "cumulative environmental effects caused by multiple large scale projects," citing "Elkins place, an adjacent street to the west, where incrementally larger and larger two story structures have

25

developed in close succession."  In addition, he cited to a number of projects "that were recently approved or built or seeking approval."[12]

However, Dr. Huey did not provide any evidence of what impacts were created by the projects or any other additions to the single family homes he cited.  (See *Sierra Club v. West Side Irrigation Dist*. (2005) 128 Cal.App.4th 690, 701-702 ["[m]erely listing, as the Sierra Club does, other projects occurring in the area that may cause significant cumulative impacts is not evidence that the assignments will have impacts or that their impacts are cumulatively considerable"].)  His speculation that other projects, when approved and considered together with Wu's, would create the significant environmental effects was pure speculation.  (See *Aptos Residents Assn. v. County of Santa Cruz* (2018) 20 Cal.App.5th 1039, 1051 ["'speculation that potential future projects similar to the one under consideration *could* cause a cumulative adverse impact,'" is "'not sufficient to negate a categorical exemption'"]; *Robinson v. City and County of San Francisco* (2012) 208 Cal.App.4th 950, 959-960 ["speculation that potential future projects similar to the one under consideration *could* cause a cumulative adverse impact is not sufficient to negate a categorical exemption"]; *Hines v. California Coastal Com*. (2010) 186 Cal.App.4th 830, 857-858 [same].)

AEP counters that, while it may not have provided evidence per se of cumulative effects, the City nonetheless had in

---

[12]    Dr. Huey's administrative complaint cited the addresses of three projects on Monte Place, two on Canyon Road, one on Highland Vista, two on Highland Oaks and one on Orange Grove Avenue.

its possession "incontrovertible evidence" of the cumulative impact of "mansionization" by virtue of exhibits submitted in two different lawsuits against the City by other citizens, and the court erred in denying its request the court take judicial notice of that evidence.  The court properly denied the request because, while existence of the lawsuits may be subject to judicial notice as court records (Evid. Code, § 452, subd. (d)), the truth of the allegations and evidence in them is not.  (See *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382; *Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 473.)  There was no error.

## DISPOSITION

The judgment is affirmed.  The City of Arcadia is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

FEUER, J.

HOWARD, J.[*]

---

[*]     Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.